John SINCLAIR, Lawrence R. Plamondon and John W. Forrest, Plaintiffs–Appellants,

v.

Kenneth L. SCHRIBER, James Sullivan and Charles Wagner, Defendants–Appellees.

No. 89–1875.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1990.

Decided Oct. 23, 1990.

Dennis M. Hayes, Ann Arbor, Mich., Hugh M. Davis, Jr. (argued), Detroit, Mich., for plaintiffs-appellants.

John C. Hoyle, Barbara L. Herwig, Irene M. Solet (argued), U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, D.C., Geneva S. Halliday, Asst. U.S. Atty., Detroit, Mich., for defendants-appellees.

Before JONES and NELSON, Circuit Judges; and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiffs appeal the district court's summary judgment dismissal of their First and Sixth Amendment claims against three Federal Bureau of Investigation (FBI) agents. We affirm for the following reasons.

## I.

John Sinclair, Lawrence R. Plamondon and John W. Forrest were defendants in a criminal proceeding in 1969 involving the bombing of a Central Intelligence Agency (CIA) office in Ann Arbor, Michigan. Plamondon was charged with the dynamite bombing of the CIA office, and all three of the current plaintiffs were charged with

conspiracy. *Sinclair v. Kleindienst*, 645 F.2d 1080, 1081 (D.C.Cir.1981) (*"Sinclair I"*). During the course of the criminal proceedings, it was revealed that the FBI had conducted warrantless telephone surveillance of the Black Panther Party in Berkeley and San Francisco, California, from February to July 1969. In conducting its surveillance, the FBI overheard conversations in which Plamondon had participated. Over the government's objection, the United States District Court for the Eastern District of Michigan ordered the government to disclose to Plamondon the contents of his monitored conversations. In *United States v. United States District Court*, 407 U.S. 297, 323–24, 92 S.Ct. 2125, 2139–40, 32 L.Ed.2d 752 (1972), the Supreme Court rejected the government's argument that no warrant was necessary in order to conduct the latter wiretaps because the wiretaps had as their purpose the protection of domestic security. The Court ordered the government to disclose to Plamondon the contents of his impermissibly intercepted conversations. However, rather than allow disclosure, the government dismissed its indictment against Plamondon, Sinclair and Forrest. *Sinclair I*, 645 F.2d at 1082.

The plaintiffs then commenced this *Bivens* suit in the United States District Court for the District of Columbia in March 1973 against the United States, President Richard Nixon, Richard Kleindienst, Patrick Gray and then Attorney General John Mitchell. Among other claims, the suit alleged violations of the plaintiffs' Fourth Amendment rights. In January 1978, during discovery on the Fourth Amendment claim, plaintiff Sinclair learned through documents obtained under the Freedom of Information Act that a second set of FBI surveillances had been conducted, this time of the White Panther Party ("WPP") of which the three plaintiffs were members. The WPP was the Caucasian counterpart of the Black Panther Party, a political organization committed to revolutionary changes in the United States. In January 1979, after further discovery on the WPP

surveillances, the plaintiffs moved to amend their complaint to add the three present defendants, Kenneth Lee Schriber, James Sullivan, and Charles Wagner, FBI agents involved in the surveillance of the WPP.

The district court denied the plaintiffs' motion for leave to join the three FBI agents as defendants and further granted summary judgment to the remaining defendants.[1] On appeal, the D.C. Circuit affirmed the district court's grant of summary judgment to Mitchell and other defendants, but reversed the court's denial of leave to join the three FBI agents as defendants. *Id.* at 1083.

After amendment of the complaint adding the FBI agents as defendants, the three agents moved for dismissal of the suit for failure to state a claim upon which relief could be granted. The district court granted this motion but the D.C. Circuit reversed, holding that the plaintiffs' complaint contained allegations sufficient to establish potentially viable claims of constitutional violations ensuing from the illegal wiretaps of the WPP. *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983) (*"Sinclair II"*). The court also reversed the district court's denial of the plaintiffs' motion to transfer the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a). *Id.*

After the case was transferred, the defendants moved for dismissal of the action, or in the alternative for summary judgment, on grounds of qualified immunity. On June 21, 1989, Judge George La Plata granted the defendants' motion. The district court first addressed the plaintiffs' claim that the defendants' violated their Fourth Amendment rights and Title III of the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510–2520 (1970), by conducting warrantless wiretaps of their conversations. The court held that because the law as to the need for a warrant in order to conduct domestic security wiretaps was not clearly established at the time the defendants acted, the defendants were entitled to qualified immunity.

---

1. President Nixon had been dismissed from the   suit earlier on grounds of absolute immunity.

**1112**

J.App. at 386. The district court next addressed the plaintiffs' claim that the defendants violated their Sixth Amendment right to assistance of counsel by illegally intercepting conversations between their defense attorneys and them during the pendency of the CIA bombing case. The court held that the plaintiffs failed to state a Sixth Amendment violation because they did not show any prejudice to their defense resulting from the wiretaps. *Id.* at 387. Finally, the district court rejected the plaintiffs' claim that the FBI agents' surveillance activity violated their First Amendment political rights. The court held that absent a showing of objective harm or a threat of specific future harm, the plaintiffs could not establish a violation of the First Amendment rights of political association and expression. *Id.* at 387–88.

## II.

Because the district court considered matters outside the pleadings, its dismissal of the plaintiffs' claims is properly treated as summary judgment. Fed.R.Civ.P. 12(b). An appellate court's review of a district court's grant of summary judgment is a *de novo* evaluation. *Pinney Dock and Transport Co. v. Penn Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Fed.R.Civ.P. 56(c) authorizes a court to enter summary judgment on a claim if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The nonmoving party must make a showing adequate to establish the existence of an essential element of his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts. *Id.* at 324, 106 S.Ct. at 2553. An appellate court must view the evidence in the light most favorable to the opponent of the summary judgment motion. *Glenway Industries, Inc. v. Wheelabrator–Frye,* *Inc.,* 686 F.2d 415, 417 (6th Cir.1982) (per curiam).

## A.

■ The district court dismissed the plaintiffs' Sixth Amendment claims because there was no evidence that the interceptions prejudiced the plaintiffs' trial defense. On appeal, the plaintiffs contend that surveillance of conversations between a criminal defendant and his attorney is *per se* violative of the Sixth Amendment and that no showing of prejudice was required at the time the defendants in the instant case conducted their surveillance of the WPP. The plaintiffs assert that the district court erroneously applied *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), to the instant case. In *Weatherford,* the Supreme Court held that in order to establish a violation of the Sixth Amendment right to counsel ensuing from government surveillance, a claimant must not only show that conversations with an attorney were surreptitiously monitored, but must also show that the information gained was used to prejudice the claimant's defense in his criminal trial. *Id.* at 552, 97 S.Ct. at 842. According to the plaintiffs, at the time the three defendants conducted their surveillance of the WPP from September 1970 through January 1971, the Supreme Court had adopted a *per se* rule that clandestine intrusion upon conversations between a criminal defendant and his attorney violated the defendant's Sixth Amendment right to counsel. The plaintiffs rely principally on *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966) (per curiam), and *O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967) (per curiam), in support of their position.

In *Black,* a defendant was convicted of federal income tax violations, and his conviction was affirmed on appeal. On appeal to the Supreme Court, the United States Solicitor General voluntarily divulged that the FBI had "bugged" defendant Black's hotel suit in the course of an unrelated criminal investigation and had electronical-

ly recorded conversations between Black and his attorney. The Solicitor General, however, assured the Court that none of the information gained through the surveillance was used to prosecute Black in the matter Black was now appealing. While expressing its reluctance to vacate a conviction without ample justification, the Supreme Court ordered a new trial in order to ensure that evidence gained through FBI surveillance not be used against Black. 385 U.S. at 28–29, 87 S.Ct. at 191–92. In *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158 the Court, citing *Black*, again vacated a conviction in the face of evidence that the government used electronic surveillance to eavesdrop on the conversations between a criminal defendant and his attorney. Because neither *Black* nor *O'Brien* explicitly required defendants to show prejudice ensuing from governmental surveillance of attorney-client communications, the plaintiffs in the instant case urge that proof of the act of surveillance by itself is sufficient to establish their Sixth Amendment claim.

In *Weatherford*, however, the Supreme Court rejected the view that it had ever adopted a *per se* approach to establishing Sixth Amendment violations:

> It is difficult to believe that the Court in *Black* and *O'Brien* was evolving a definitive construction of the Sixth Amendment without identifying the Amendment it was interpreting, especially in view of the well-established Fourth Amendment grounds for excluding the fruits of illegal surveillance. If anything is to be inferred from these two cases with respect to the right to counsel, it is that when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial. This is a far cry from the *per se* rule ... for under that rule trial prejudice is deemed irrelevant.

429 U.S. at 552, 97 S.Ct. at 842 (footnote omitted). Furthermore, even prior to *Weatherford*, the Sixth Circuit applied an "intrusion plus" standard to Sixth Amend-

ment claims of illegal interference with attorney-client relations. *Bishop v. Rose*, 701 F.2d 1150, 1156 (6th Cir.1983). In light of the foregoing, the plaintiffs' contention that the district court erred by applying *Weatherford* is without merit.

B.

The plaintiffs next contend that even under the prejudice requirement of *Weatherford*, they have established a violation of their Sixth Amendment right to counsel. They maintain that the wiretaps of the WWP were undertaken at the time of their indictment for the bombing of a CIA office in Ann Arbor, Michigan in 1968 for the specific purpose of obtaining information about their defense strategies. The plaintiffs cite internal FBI memoranda stating that evidence obtained from surveillance of the WPP would be introduced in court. The plaintiffs also assert that the logs of the intercepted telephone conversations demonstrate the requisite prejudice to establish a Sixth Amendment violation.

■ The government responds initially that the plaintiffs have specifically identified only eight intercepted conversations, four of which were overheard by agents who are not defendants in this lawsuit. Moreover, the government contends that the plaintiffs' argument that their Sixth Amendment right to counsel was prejudiced is implausible in light of the fact that the indictment against them was dismissed and they were never tried. In *Weatherford*, the Supreme Court was concerned with whether the government's secret informant had used in his *trial testimony* information gained through intrusions on the defendant's conversations with his attorney. 429 U.S. at 558, 97 S.Ct. at 845. Likewise, in *Black*, the court vacated the defendant's conviction and ordered a new trial to "permit the removal of any doubt as to Black's receiving a *fair trial* with full consideration being given to the new evidence reported to us [in intercepted conversations]...." 385 U.S. at 29, 87 S.Ct. at 192 (emphasis added). Thus, the cases cited by both parties clearly contemplate a prejudice to a defendant's trial defense.

However, because it is possible for a defendant to suffer prejudice from government intrusions on attorney-client communications even though the charges against him are dismissed,[2] we decline the government's invitation to hold that dismissal of an indictment necessarily precludes a showing of prejudice. Instead, because the plaintiffs in the instant case base their Sixth Amendment claim on the mere fact of surveillance, we hold that they have failed to make the requisite showing of prejudice and that their claim was properly dismissed.

## C.

■ Even if the panel decided that the plaintiffs had established a Sixth Amendment violation under *Weatherford*, the defendants would probably be entitled to qualified immunity because it was not clearly established law at the time of the WPP wiretaps that such surveillance was prohibited by the Sixth Amendment. The law regarding the constitutionality of warrantless domestic security wiretaps under the Fourth Amendment was not clearly established until the Supreme Court's decision in *Keith*, 407 U.S. 297, 92 S.Ct. 2125, which was decided after the wiretap of the WPP. *Mitchell v. Forsyth*, 472 U.S. 511, 534–35, 105 S.Ct. 2806, 2819–20, 86 L.Ed.2d 411 (1985). The parties have cited no authority which indicates that the Sixth Amendment's proscription of warrantless domestic security wiretaps was any more clearly established than that of the Fourth Amendment at the time of the WPP surveillance. Government officials may not be held liable for performance of discretionary functions where their actions do not violate clearly established constitutional or statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The plaintiffs cite a 1969 internal government memorandum from Attorney General John Mitchell establishing procedures to limit the overhearing of attorney-client conversations during electronic surveillance as evidence of the FBI's awareness that such surveillance may infringe the Sixth Amendment right to assistance of counsel. However, "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation.... unless that statute or regulation provides the basis for the cause of action sued upon." *Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984). The internal memorandum cited by the plaintiffs does not create a cause of action for damages and thus could not be relied on to sue the defendants based on their interception of conversations between the plaintiffs and their attorneys. *See id.*

## III.

■ Relying principally on their own affidavits as evidence, the plaintiffs next contend that the district court erred in dismissing their claim that the wiretaps of the WPP violated their First Amendment politi-

**2.** The Ninth Circuit has observed that government interference in the attorney-client relationship can prejudice a defendant in several respects. *See United States v. Irwin*, 612 F.2d 1182 (9th Cir.1980). Noting first that prejudice results when information gained from the interference is used against the defendant at trial, the *Irwin* court stated: "It also can result from the prosecution's use of confidential information pertaining to the defense plans and strategy, from government influence which destroys the defendant's confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage at trial." *Id.* at 1187 (footnote omitted). In *Irwin*, a government agent met with the defendant without the consent of the defendant's lawyer and elicited various incriminating statements from him during a tape recorded conversation. Although none of these statements were used against the defendant at his trial, the defendant argued that the agent's intrusion into his relationship with his attorney substantially destroyed his attorney-client relationship. The Ninth Circuit held that if the defendant desired to show prejudice apart from the use of improperly obtained evidence at his trial, he must demonstrate that the government's intrusion resulted in the diminishment of the confidence he had in his attorney. For instance, had the government disparaged the defense attorney's abilities to the point of the defendant's believing he was no longer competently represented, a Sixth Amendment violation might be established. *Id.* at 1188–89. However, no such claim has been made by the plaintiffs in the case at bar.

cal rights. In *Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1971), the Supreme Court held that a plaintiff may not assert a claim that his First Amendment political rights have been violated by showing a mere "subjective 'chill'." Rather, the plaintiffs must show that the activity undertaken by the government presented a "specific present objective harm or a threat of specific future harm." *Id.* at 14, 92 S.Ct. at 2326. *See also Ghandi v. Police Dept. of City of Detroit,* 747 F.2d 338, 347 (6th Cir.1984) (plaintiffs who assert that their constitutional rights were chilled by government activity must allege more than mere surveillance; they must make reference to specific instances of misconduct beyond surveillance).

The affidavit of plaintiff John W. Forrest does not address the effects of the FBI's electronic surveillance of the WPP on Forrest's political activity. J.App. at 343–47. John Sinclair's affidavit states in conclusory fashion:

> The chilling effect of FBI wiretaps and other illegal surveillance and interference in my political activities as Chairman of the Rainbow People's [sic] Party was of principal importance in bringing my political activism to an end in 1974. Since that time I have not been willing to subject myself and my family members to the kind of illegal, clandestine, and unconstitutional spying activities which are still practiced by the FBI.

*Id.* at 350. Sinclair's assertion is precisely the kind of "subjective chill" which *Laird* held to be nonactionable. The remaining two affidavits of Lawrence Plamondon and David A. Sinclair, who is not a party to this suit, also fail to allege specific instances of misconduct beyond surveillance. *Id.* at 353–63. Accordingly, we conclude that the district court properly dismissed the plaintiffs' First Amendment claim.

### IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.