[Nos. 17982-6-III; 17983-4-III; Division Three.   February 15, 2000.]
    17984-2-III.
    THE STATE OF WASHINGTON, *Respondent*, v. ADAM GARZA,
                        *Petitioner.*
    THE STATE OF WASHINGTON, *Respondent*, v. ROBERT R.
                MENDENHALL, *Petitioner.*
    THE STATE OF WASHINGTON, *Respondent*, v. RONALD L.
                CASEBEER, *Petitioner.*

*Kevin L. Holt,* for petitioners.

*Andrew K. Miller, Prosecuting Attorney,* and *John V. Jensen, Deputy,* for respondent.

*Bruce L. Brown,* on behalf of the Washington Defender Association, amicus curiae.

KATO, J. — The defendants in these cases, which we have consolidated for purposes of this decision, have obtained discretionary review of the superior court's denial of their motions to dismiss. The cases require us to consider whether, and in what circumstances, jail officials may seize and examine criminal defendants' legal documents. We remand for additional fact finding.

On July 25, 1998, officers at the Benton County Jail discovered that a window bar had been partially cut with what appeared to be a hacksaw blade. They also discovered that a desk's base support and a window screen had been damaged.

Concluding one or more inmates had attempted to escape from the jail, officers conducted an extensive search of the pod where the damage occurred. They strip-searched the inmates and issued new clothes, removed mattresses and checked them with metal detectors, and examined drains, light fixtures, and the insides of television sets. The inmates' personal property, including legal documents containing private communications with their attorneys, was seized and "gone through."

Among the inmates whose property was seized were Adam Garza, Robert R. Mendenhall, and Ronald L. Casebeer. Mr. Garza was charged with two counts of conspiracy to commit murder and faces a mandatory life term under the three-strikes statute, RCW 9.94A.120(4). Mr. Mendenhall was charged with first degree assault with a deadly weapon. Mr. Casebeer was charged with first degree robbery and also faces a mandatory life term under the three-strikes statute.

The inmates testified they were deprived of their legal materials for up to 32 days, during which time their trial dates were approaching. Mr. Garza testified he saw an officer reading his legal materials. Mr. Mendenhall and Mr.

Casebeer testified that when their materials were returned, they were out of order and appeared to have been read or copied. The superior court's written findings of fact do not expressly determine whether the inmates' legal materials were read or copied. In its oral ruling[1] the court stated: "It's pretty clear that the inmates, all three of the inmates' legal papers were seized and then looked through and in one case read by Officer Mancillas."

The three inmates moved to dismiss the cases on various grounds, including that the seizure and examination of the legal materials denied them effective assistance of counsel and violated the attorney-client privilege. After a hearing, the court entered the following conclusions:

1. There were reasonable grounds to believe that an escape was attempted and that a cutting tool was used in the attempt.

2. The search of the jail pod was legal and the seizure of the defendants['] items was legal.

3. The search was done in good faith for objective security reasons. A thorough search of all items including legal paperwork was necessary due to the fact that the item was small in nature.

4. The defendant[ ]s had a diminished expectation of privacy with regards to there [sic] personal items located in the jail. In balancing . . . the defendants['] right to private communication with their attorney[s] and the institution[al] concerns for security the court finds that there was no misconduct.

5. There is also no foreseen prejudice in this case and no evidence that any confidential communication[s] were obtained.

6. The defendants['] paper work should have been returned in a more timely fashion.

7. Any misconduct arising from the delay of returning the paperwork did not cause the defendant[ ]s to be prejudiced. All

---

[1]When a court's written findings are inadequate, a reviewing court may look to an oral ruling for clarification. *In re Detention of LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986).

the defendants were represented by counsel and when a request was made to the court the paperwork was returned.

8. The State acted in good faith throughout the process.

Based on these conclusions, the court denied the motions to dismiss. The defendants then moved for discretionary review, which this court granted.

CrR 8.3(b) provides in pertinent part:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect[s] the accused's right to a fair trial.

Denial of a motion to dismiss under this rule is reviewed for abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587, 71 A.L.R.5TH 705 (1997). To support dismissal under this rule, a defendant first must show arbitrary action or governmental misconduct. *Id.* at 239. The arbitrary action or mismanagement need not be evil or dishonest; simple mismanagement is enough. *Id.* Second, the defendant must demonstrate the arbitrary action or misconduct resulted in prejudice affecting his right to a fair trial. *Id.* at 240. "[D]ismissal of charges is an extraordinary remedy available only when there has been prejudice to the rights of the accused which materially affected his or her rights to a fair trial." *City of Seattle v. Orwick*, 113 Wn.2d 823, 830, 784 P.2d 161 (1989); *see State v. Baker*, 78 Wn.2d 327, 474 P.2d 254 (1970). Dismissal is not justified when suppression of evidence will eliminate whatever prejudice is caused by the action or misconduct. *Orwick*, 113 Wn.2d at 831.

The defendants here do not contend generally that the searches of their cells and personal items were improper. *See Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (inmates have no reasonable expectation of privacy in prison cells). Nor do they contend that deprivation of their materials violated their rights to access to

the courts.[2] *See Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (to prevail on access-to-court claim, prisoner must demonstrate actual injury to a specific claim that sought to vindicate a basic constitutional right). They do contend, however, that their legal materials contained confidential information protected by the attorney-client privilege and that the jail officers' inspection of those materials violated their right to counsel, which is protected by the Sixth Amendment and by article I, section 22 (amendment 10) of the Washington Constitution.

Effective representation requires that a criminal defendant be permitted to confer in private with his or her attorney. *State v. Cory*, 62 Wn.2d 371, 373-74, 382 P.2d 1019, 5 A.L.R.3D 1352 (1963). Intrusion into private attorney-client communications violates a defendant's right to effective representation and due process. *Id.* at 374-75. Even "high motives and zeal for law enforcement cannot justify spying upon and intrusion into the relationship between a person accused of crime and his counsel." *Id.*

Although the State argues there was no misconduct here, the superior court's findings, particularly when clarified by its oral ruling, make it clear that the jail officers seized, examined, and perhaps even read the defendants' legal materials (including private attorney-client communications). The State's actions, although motivated by a legitimate concern over a serious security breach, intruded into the defendants' private relationships with their attorneys. *See Bishop v. Rose*, 701 F.2d 1150 (6th Cir. 1983) (jail officers obtained defendant's statement to his attorney during a search of his cell and turned the statement over to the prosecutor); *State v. Granacki*, 90 Wn. App. 598, 601-02, 959 P.2d 667 (1998) (State conceded misconduct when detective looked at defense counsel's legal pad during courtroom recess); *see also Wolff v. McDonnell*, 418 U.S. 539, 576-77, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (open-

---

[2]Mr. Casebeer's pro se brief does allege the jail officers' retention of his legal materials was arbitrary and an abuse of authority, but he does not explain how the action deprived him of access to the court.

ing legal mail in presence of inmates, without reading it, accommodates prison's security concerns while protecting inmates' right to private communications with attorneys).

The critical issue, then, is the appropriate remedy. The State, relying on the prejudice requirement in CrR 8.3(b), contends dismissal is not proper because the defendants have failed to demonstrate they were harmed. The defendants and amicus curiae counter by citing two cases which they contend establish the State bears the burden of proving lack of prejudice. *See State v. Sherman*, 59 Wn. App. 763, 801 P.2d 274 (1990); *State v. Getty*, 55 Wn. App. 152, 777 P.2d 1 (1989). However, both cases addressed the harmless error rule, which assigns to the State the burden *on appeal* of demonstrating a constitutional error was harmless beyond a reasonable doubt. *Sherman*, 59 Wn. App. at 768; *Getty*, 55 Wn. App. at 155-56. These authorities do not apply in this context.

In fact, we have found no Washington authority that directly addresses who bears the burden of proof in this circumstance. The Supreme Court's decision in *Cory* comes the closest. In that case, officials electronically eavesdropped on an inmate's conversations with his attorney in a jail conference room. *Cory*, 62 Wn.2d at 372. The trial court declined to dismiss the charges but excluded any evidence derived from the eavesdropping. *Id.* The Supreme Court held dismissal was the appropriate remedy:

> There is no way to isolate the prejudice resulting from an eavesdropping activity, such as this. If the prosecution gained information which aided it in the preparation of its case, that information would be as available in the second trial as in the first. If the defendant's right to private consultation has been interfered with once, that interference is as applicable to a second trial as to the first. And if the investigating officers and the prosecution know that the most severe consequence which can follow from their violation of one of the most valuable rights of a defendant, is that they will have to try the case twice, it can hardly be supposed that they will be seriously deterred from indulging in this very simple and convenient method of obtaining evidence and knowledge of the defendant's trial strategy.

*Cory,* 62 Wn.2d at 377 (footnote omitted). In a footnote, the court assumed the information obtained in the eavesdropping was relayed to the prosecutor. *Id.* at n.3.

The United States Supreme Court subsequently has rejected a per se rule that any government intrusion into private attorney-client communications establishes a Sixth Amendment violation of a defendant's right to counsel. *Weatherford v. Bursey,* 429 U.S. 545, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). The constitutional validity of a conviction in these circumstances will depend on whether the improperly obtained information has "produced, directly or indirectly, any of the evidence offered at trial." *Id.* at 552. In the wake of *Weatherford,* federal courts have not been clear as to which party bears the burden of proving prejudice or lack of prejudice or whether prejudice may be presumed in some circumstances. *See Shillinger v. Haworth,* 70 F.3d 1132, 1140-41 (10th Cir. 1995); Joshua T. Friedman, Note, *The Sixth Amendment, Attorney-Client Relationship and Government Intrusions: Who Bears the Unbearable Burden of Proving Prejudice?,* 40 WASH. U. J. URB. & CONTEMP. L. 109, 130-36 (1991); Note, *Government Intrusions Into the Defense Camp: Undermining the Right to Counsel,* 97 HARV. L. REV. 1143, 1149-51 (1984).

In *United States v. Irwin,* 612 F.2d 1182 (9th Cir. 1980), the Ninth Circuit court appeared to hold the burden was the defendant's:

> Prejudice can manifest itself in several ways. It results when evidence gained through the interference is used against the defendant at trial. It also can result from the prosecution's use of confidential information pertaining to the defense plans and strategy, from government influence which destroys the defendant's confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage at trial.

*Id.* at 1187 (footnote omitted).

Other federal courts and commentators have concluded that prejudice may be presumed in some circumstances. *See Sinclair v. Schriber,* 916 F.2d 1109, 1112-13 (6th Cir.

1990); *Clark v. Wood*, 823 F.2d 1241, 1250 (8th Cir.), *cert. denied*, 484 U.S. 945 (1987); *United States v. Ofshe*, 817 F.2d 1508, 1515 (11th Cir.), *cert. denied*, 484 U.S. 963 (1987); *United States v. Morales*, 635 F.2d 177, 179 (2d Cir. 1980); *Mastrian v. McManus*, 554 F.2d 813, 821 (8th Cir.), *cert. denied*, 433 U.S. 913 (1977); *United States v. Noriega*, 764 F. Supp. 1480, 1488-89 (S.D. Fla. 1991); 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 11.8, at 75 (1984).

In *Shillinger*, a sheriff required that a deputy be present during the defendant's consultations with his attorney. Although defense counsel paid the deputy for his time and allegedly instructed him to consider himself a defense employee, the deputy conveyed the substance of the attorney-client conversations to the prosecutor. *Schillinger*, 70 F.3d at 1134. The 10th Circuit court held:

> Because we believe that a prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct. We also note that "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." [*Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984)].

> Our holding subsumes the state's argument that harmless error analysis should apply to this sort of Sixth Amendment violation because our per se rule recognizes that such intentional and groundless prosecutorial intrusions are never harmless because they "necessarily render a trial fundamentally unfair." *Rose v. Clark*, 478 U.S. 570, 577, 106 S. Ct. 3101,

3105, 92 L. Ed. 2d 460 (1986). Additionally, the rule we adopt today in no way affects the analysis to be undertaken in cases in which the state has a legitimate law enforcement purpose for its intrusion. *See Weatherford*, 429 U.S. at 557, 97 S. Ct. at 844 ("our cases . . . have recognized the unfortunate necessity of undercover work and the value it often is to effective law enforcement."). Such cases would, of course, require proof of "a realistic possibility of injury to [the defendant] or benefit to the State" in order to constitute a violation of a defendant's Sixth Amendment rights. *Id.* at 558, 97 S. Ct. at 845.

*Shillinger*, 70 F.3d at 1142. Having presumed the violation prejudiced the defendant, the court went on to consider the appropriate remedy: In circumstances in which the prejudice may be contained by suppressing evidence or ordering a new trial, dismissal is not required. *Id.* at 1143. In other circumstances, "an intrusion could so pervasively taint the entire proceeding that a district court might find it necessary to take greater steps to purge the taint," including dismissal. *Id.*

This analysis is consistent with Washington courts' approach in similar circumstances. In *Cory*, where the jailers' eavesdropping was both purposeful and without legitimate justification, the court presumed prejudice to the defendant. Dismissal was required because the violation was "shocking and unpardonable." *Cory*, 62 Wn.2d at 378. Similarly, in *Granacki*, because the deputy's courtroom examination of defense counsel's legal pad was purposeful and without justification, the superior court properly presumed prejudice. *Granacki*, 90 Wn. App. at 604. The superior court did not abuse its discretion by dismissing the prosecution in light of the deputy's abuse of the court's trust and the court's desire to curb the " 'odious practice of eavesdropping on privileged communication between attorney and client.' " *Granacki*, 90 Wn. App. at 603 (quoting *Cory*, 62 Wn.2d at 378).

█ In this case, the superior court's written and oral findings indicate the jail officers' examination of the defendants' legal materials was purposeful. The court concluded,

however, that the examination of the legal materials was justified by the jail's legitimate concerns about the attempted escape. This conclusion misses the point. Certainly the escape attempt justified the search, but the precise question is whether the security concerns justified such an extensive intrusion into the defendants' private attorney-client communications. This determination requires a precise articulation of what the officers were looking for,[3] why it might have been contained in the legal materials, and why closely examining or reading the materials was required. We conclude the superior court abused its discretion by failing to resolve these critical factual questions. Without more specific factfinding, it is impossible to determine whether the officers' actions were justified. If, on remand, the superior court finds the jail's security concerns did not justify the specific level of intrusion here, there should be a presumption of prejudice, establishing a constitutional violation.

■ On the other hand, even if there is no presumption of prejudice, the defendants still may demonstrate prejudice by demonstrating (1) that evidence gained through the intrusion will be used against them at trial; (2) that the prosecution is using confidential information pertaining to defense strategies; (3) that the intrusions have destroyed their confidence in their attorneys; or (4) that the intrusions will otherwise give the State an unfair advantage at trial. *See Irwin*, 612 F.2d at 1187. Again, this determination requires a more thorough examination of the facts, which the superior court should conduct on remand.

Finally, if the defendants establish the jail officers' actions violated their right to counsel in any of these ways, the superior court in its discretion should fashion an appropriate remedy, recognizing that dismissal is an extraor-

---

[3]Most of the evidence indicated officers were looking for a hacksaw blade. However, at least one officer testified he also was looking for inmates' notes regarding the escape attempt.

dinary remedy, appropriate only when other, less severe sanctions will be ineffective. *See Shillinger,* 70 F.3d at 1143.[4]

The cases are remanded for additional fact finding.

BROWN, A.C.J., and SWEENEY, J., concur.

Review denied at 141 Wn.2d 1014 (2000).

---

[4]Under the circumstances we find it unnecessary to address the pro se briefs of Mr. Casebeer and Mr. Mendenhall. Their arguments are addressed by our analysis here, are factual contentions best addressed to the superior court on remand, or have been raised and addressed in other contexts.