FILED
COURT OF APPEALS
DIVISION II

2014 JUL 29 AM 11: 38

STATE OF WASHINGTON

BY_____ DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44711-8-II |
| Respondent, | |
| v. | |
| TERAL ANTHONY THOMAS, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Teral Anthony Thomas appeals his convictions of second degree assault, felony violation of a pretrial no contact order (3 counts) (domestic violence), and third degree malicious mischief (domestic violence). He claims that (1) the police obtained a residential search warrant without probable cause, (2) the trial court violated his right to counsel by not inquiring into the breakdown of the attorney-client relationship in response to his request for new counsel, (3) he was denied his right to effective assistance of counsel, and (4) he is entitled to an evidentiary hearing on whether governmental misconduct interfered with his attorney-client privilege. We find no error, and affirm.

FACTS

Thomas and AL[1] dated for approximately two years before the relationship ended in early 2012. AL subsequently obtained a no contact order precluding Thomas from coming within 500 feet of her residence, school, or place of employment.

On August 17, 2012, AL called the police to report that Thomas had contacted her at Wal-Mart where she worked, violating the no-contact order. AL and Kenneth Ness, a co-worker, identified Thomas as the person that had contacted AL in the store and again in an outside employee's lounge. The police went to Thomas's residence but were unable to locate him there.

On August 22, 2012, AL and Ness were outside of the Wal-Mart store when a man yelled at the couple and then punched Ness, breaking his nose and glasses. The man knocked Ness to the ground and repeatedly struck him. Daniel Buhman witnessed the attack. Ness testified that the assailant asked AL, "This is who you want to be with?" Report of Proceedings (RP) at 164. At the scene, AL gave a statement to a police officer during which she identified the assailant as Thomas. After searching the area and going to Thomas's residence, the police were unable to find him.

On September 2, 2012, AL called the police to report that Thomas had again violated the no-contact order. This time AL was in her car near a bus stop close to her work when Thomas approached and asked her to talk. When she said no, he walked behind her car, striking and denting it.

The police obtained a search warrant for the residence Thomas shared with his grandparents. They apprehended Thomas hiding between the bed and wall in his grandmother's

---

[1] We use the victim's initials to protect her privacy.

bedroom. Later, the police obtained photographs of text messages that Thomas had sent to AL that evening.

The State charged Thomas with second degree assault, three counts of a protection order violation, and malicious mischief. On February 13, 2013, Thomas, pro se, filed a CrR 8.3 motion to dismiss based on governmental misconduct. In the motion he alleged that Thurston County Jail staff seized confidential legal materials he needed in order to prepare for trial. On February 20, 2013, Thomas, through counsel, moved for a continuance to investigate what happened to these legal materials. The trial court denied the continuance request because the alleged seizure took place in December and it was only now being brought to the court's attention. The trial court also was concerned that due to his military service, Ness would be unavailable to testify if the trial was continued.

The trial court also considered Thomas's pro se motion to remove defense counsel and appoint new counsel. The trial court denied this motion, ruling:

> Mr. Thomas, I appreciate your concerns, but, in fact, Mr. Shackleton has been representing you this morning, has been doing quite an intelligent and apt job. He is raising, clearly, all of the important issues for this Court to consider, filed the motions in limine and the like. I'm going to deny your request. There's nothing in this record to suggest that Mr. Shackleton is not appropriately representing you in this matter. You don't have the right to an attorney of your choosing. And I don't find a basis to grant your motion, so I'm denying that motion.

RP at 28-29.

A jury found Thomas guilty of all charged offenses and by special verdict that the protection order violations and malicious mischief were against members of the same family or household. Thomas appeals.

ANALYSIS

A.    PROBABLE CAUSE FOR WARRANT

Thomas argues that probable cause did not support the search warrant used to enter his residence, as there was no evidence establishing his presence in the home. However, because Thomas did not move to suppress any evidence related to the search, he waived this claim and we do not consider it. *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995). Thomas cites RAP 2.5(a)(3) for the proposition that an appellant may raise a manifest constitutional error for the first time on appeal. But he provides no analysis under this rule and has failed in his burden to establish that his claim involves manifest error. *State v. McFarland*, 127 Wn. 2d 322, 334, 899 P.2d 1251 (1995).[2]

B.    REQUEST FOR NEW COUNSEL

Thomas argues that the trial court violated his constitutional right to counsel by refusing to review his written motion for a new attorney, in not inquiring into the conflict, and in not appointing new counsel. We disagree.

When reviewing a trial court's refusal to appoint new counsel, we consider "(1) the extent of the conflict, (2) the adequacy of the [trial court's] inquiry, and (3) the timeliness of the motion." *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80 (2006) (quoting *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 724, 16 P.3d 1 (2001)). Applying these inquiries, we review the trial court's decision for an abuse of discretion. *Cross*, 156 Wn.2d at 607.

---

[2] However, we do address this issue pursuant to Thomas's ineffective assistance of counsel argument, and conclude that probable cause did support the warrant.

### 1. Extent of the Conflict

Thomas argues he had an irreconcilable conflict with his attorney, and the trial court erred in not appointing new counsel. When the trial court asked Thomas to explain his position he responded:

> I'd like the Court to know I feel that my attorney is ineffective. I brought up to him several times on several occasions of things pertaining to my case, such as witnesses, my alibi, so on and so forth, and he has failed yet to get any of my witnesses or my alibi. And it's a big part in my defense, and I really, really do need them.
>
> Also, I filed a couple -- I talked to him about filing a couple of motions as soon as I got in here pertaining to Sergeant Barnes committing perjury, and he stated that that was a professional error. So I wanted that to be addressed to the Court as well.
>
> And I brought up issues to him several times, and I feel that he's ineffective, because he has yet to do what I asked him.

RP at 27.

This is not the type of conflict that raises Sixth Amendment concerns because there was no actual conflict of interest. *Cross*, 156 Wn.2d at 609. Instead, this appears to be a disagreement about the approach defense counsel was taking in developing a defense. Such disagreement over trial strategy is insufficient to find a cognizable conflict. *Stenson*, 142 Wn.2d at 729. "[T]his is the type of conflict that courts generally leave to the attorney and client to work out, absent ineffective assistance of counsel." *Cross*, 156 Wn.2d at 609.

### 2. Adequacy of Trial Court's Inquiry

Thomas argues that the trial court's limited inquiry was inadequate. He claims that the trial court should have made some effort to obtain his written motion or to have reviewed a copy of the motion that Thomas offered during the hearing.

The trial court was unable to consider Thomas's written motion because it was not in the court file and apparently had not yet been filed. However, the trial court did have defense counsel's statement that his client wanted him removed and Thomas's explanation quoted above. Rather than reading the document in open court while the parties waited, the trial court prudently asked Thomas to explain his concerns. Previously, defense counsel had explained to the trial court that he did not think that the Rules of Professional Conduct prevented him from continuing to represent Thomas. Under the circumstances, the trial court conducted an adequate inquiry. *See State v. Schaller*, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007) ("a trial court conducts adequate inquiry by allowing the defendant and counsel to express their concerns fully.").

3. Timeliness

Thomas first asked for a new attorney on February 20, 2013. At that time, defense counsel explained to the court that Thomas was in the process of filing his motion. As of the first day of trial, the court had not received his motion, but did allow Thomas to make his motion orally. The trial court intended to begin jury selection but reluctantly postponed the trial because of the State's late disclosure of a video recording. The trial court also was concerned because Ness was leaving for basic training in 10-12 days and would not be available to testify in person. Timeliness weighed in favor of denying the motion.

The trial court did not abuse its discretion in denying Thomas's motion for a new attorney. The extent of the conflict, if any, was tactical. The trial court allowed Thomas to adequately explain his concerns. And there were timing concerns that would have affected the trial. Thomas's claim fails.

6

C.     EFFECTIVE ASSISTANCE OF COUNSEL

Thomas argues that he was denied his constitutional right to effective assistance of counsel because defense counsel (1) failed to move for suppression of evidence resulting from the allegedly invalid search warrant, (2) introduced hearsay testimony from Buhman that served as the only substantive evidence of identity of the August 22 assault, (3) failed to object to hearsay testimony from AL and a police officer regarding the September 2 incident, and (4) advocated against his client's wishes by not withdrawing as counsel and not advocating for withdrawal. We disagree.

To prevail on an ineffective assistance of counsel claim, the defendant must show not only that defense counsel's representation was deficient, but also that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. When reviewing an ineffective assistance of counsel claim, we begin with the presumption that counsel's assistance was effective. *Grier*, 171 Wn.2d at 33. This presumption continues until the defendant shows in the record the absence of legitimate or tactical reasons supporting his counsel's conduct. *Grier*, 171 Wn.2d at 33-34.

1.     Not Filing a Motion to Suppress

Thomas argues that defense counsel should have moved to suppress based on lack of probable cause supporting the search warrant. He argues that failing to suppress allowed the State to introduce evidence that he was hiding in the house and that the jury could use this as substantive evidence of his guilty conscience.

7

But a motion to suppress would not have succeeded because probable cause did support the warrant. A magistrate may issue a search warrant only if supported by probable cause. *See State v. Garcia-Salgado*, 170 Wn.2d 176, 186-87, 240 P.3d 153 (2010). Probable cause means that the facts and circumstances described "establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location." *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003).

Officer Barnes's warrant application informed the magistrate that the victim had identified Thomas as the suspect, that he lived at 8528 48th Court Northeast in Olympia, that his driver's license bore this address, that Thomas's grandfather confirmed Thomas lived there, that the cell phone used to send threatening text messages to AL was within a mile of the home, that the phone shut off when the police began investigating the residence, and that all of this occurred at 2:00 a.m. on a Monday. A neutral and detached magistrate could draw reasonable inferences from these facts and circumstances to conclude that Thomas and the cell phone were at his residence. *State v. Maddox*, 152 Wn.2d 499, 599, 98 P.3d 1199 (2004). Thomas's claim of ineffective representation as to the failure to suppress fails.

2. Eliciting Identity Evidence from Buhman

On cross-examination of Buhman, defense counsel elicited testimony that after the August 22 assault AL and Ness identified Thomas as the assailant. Thomas argues that his counsel was ineffective because this hearsay testimony undermined his defense of mistaken identity. We disagree.

Thomas's counsel was presented with a situation where Buhman had identified Thomas as the assailant on direct examination but failed to identify him in court. The State asked

8

Buhman, "What happened that you observed that led you to talk to law enforcement?" RP at 86. Buhman responded, "As I came out of [Wal-Mart], I saw a gentleman and a lady walking up, and the -- *it would be the defendant*, Teral--." RP at 86 (emphasis added). However, after testifying that he would recognize the assailant if he saw him again, Buhman stated that he did not see him in the courtroom.

Given this testimony, defense counsel may have had a tactical reason to explore what AL and Ness had said at the scene. Because Buhman identified Thomas as the assailant during direct examination, defense counsel may have wanted to discredit that testimony. By having Buhman explain that AL and Ness identified Thomas at the scene, defense counsel succeeded in undermining Buhman's identification of Thomas by getting him to admit that (1) he did not know the assailant and (2) he only reported Thomas's name because AL had identified the assailant to him while he was speaking with the 911 operator. This was a legitimate tactical decision.

Further, Thomas's argument that Buhman's cross-examination testimony was the only evidence identifying Thomas as the assailant is incorrect. AL also testified that she told police at the scene that Thomas was the assailant, and as discussed below this statement was not hearsay under ER 801(d)(1)(iii). As a result, asking Buhman to state what AL said at the scene caused no prejudice. Thomas's ineffective assistance of counsel claim on this basis fails.

3. Failure to Object to Identification Testimony

At trial, AL did not identify Thomas as the person who assaulted Ness. However, she testified that at the scene she told police that Thomas was the assailant. Similarly, at trial AL was unable to identify Thomas as the person who hit her car on September 2, but testified that on

the night of the incident she told police that she suspected Thomas was the person who hit her car. And a police officer testified that AL told him that Thomas was the person who hit her car. Thomas argues that defense counsel was ineffective because he failed to object to (1) AL's testimony about identifying Thomas at the time of the two incidents, (2) the police officer's testimony about the September 2 incident, and (3) to request a limiting instruction for that testimony. We disagree.

Thomas argues that AL's and the police officer's testimony was objectionable because it was hearsay. However, ER 801(d)(1)(iii) provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination about the statement, and the statement is "one of identification of a person made after perceiving the person." Here, AL made the statements to police identifying Thomas at the scene of both incidents after perceiving him to be the suspect. Accordingly, the statements were not hearsay and were admissible as substantive evidence. Any objection would have been overruled, and no limiting instruction would have been appropriate. Thomas's ineffective assistance of counsel claim on this basis fails.

4.  Advocating Against Client

Thomas argues that defense counsel abridged his duty of loyalty by not advocating for removal and thus substituted his own interests for those of Thomas's. He claims this violated RPC 1.2(a). He argues that this situation created an actual conflict of interest because if defense counsel had advocated for removal, it would have subjected defense counsel to sanctions for unprofessional conduct, thereby damaging his reputation and exposing him to civil liability. He describes this as a "classic" actual conflict of interest, citing *State v. Regan*, 143 Wn. App. 419, 425, 177 P.3d 783 (2008). We disagree.

*Regan* is distinguishable. There, trial counsel was in the untenable position of following his client's wish to go to trial with the prospect of being compelled to testify against his client. Division Three of this court reversed because this was "a classic example of a choice between alternative courses of action that was helpful to defense counsel's own interests and harmful to Mr. Regan's. And it shows an actual conflict of interest." *Regan*, 143 Wn. App. at 429.

Here, as we observed above, no actual conflict of interest existed. Defense counsel was not put in the untenable position of choosing between his own and his client's best interest. Counsel simply told the court:

> Your Honor, this is my client's request. I don't believe that there is anything at this point under the Rules of Professional Conduct that prevent me from representing him. But I know he wants the Court to, on his own motion, have me removed as counsel and the Court appoint another attorney. So I will actually have him address the Court.

RP at 25. RPC 1.2(a) requires an attorney to "abide by a client's decisions concerning the objectives of representation." The comment to this rule anticipates that a lawyer and client will disagree about how to attain the client's objectives and suggests that the lawyer should consult with his client and seek a mutually acceptable resolution of the disagreement. And then, if there is a fundamental disagreement, the lawyer may withdraw or the client may discharge the attorney.

The most the record demonstrates is that Thomas expected his attorney to do more than he was doing in his defense. Further, defense counsel merely told the trial court that he did not believe that he had an ethical obligation to withdraw. And defense counsel had an ethical obligation to be candid with the trial court. RPC 3.3. Thomas's claim is speculative and not

11

based on objective fact. We find no conflict of interest requiring counsel to advocate for withdrawing his representation. This basis for Thomas's ineffective assistance claim also fails.

D.    GOVERNMENTAL MISCONDUCT

Thomas argues that the trial court erred in not investigating whether the jail staff had seized a confidential letter Thomas had written to defense counsel. He asks this court to remand for the purpose of determining whether governmental misconduct occurred, affected his trial, and denied him his right to counsel, mandating dismissal of the charges. We reject this argument based on insufficient evidence.

In *State v. Garza*, 99 Wn. App. 291, 293, 994 P.2d 868 (2000), three inmates had their legal materials seized as part of a security sweep following an attempted escape. Jail staff retained the materials for up to 32 days, during which time at least one guard read the materials. *Garza*, 99 Wn. App. at 294. The three inmates moved to dismiss based on governmental misconduct. *Garza*, 99 Wn. App. at 294. Division Three of this court ruled that when the officers actually examined and read the defendants' legal materials, they intruded into the defendants' private relationship with their attorneys. *Garza*, 99 Wn. App. at 296. The court remanded for the trial court to determine the extent of the intrusion and any prejudice from it, and to fashion an appropriate remedy. *Garza*, 99 Wn. App. at 301-02.

Here, Thomas alleges that the jail staff seized a letter containing confidential information that he had written for the purpose of recording his recollections so that he could better prepare a defense. But Thomas presented no evidence that this letter exists, that the jail staff examined or read it, or that there was any interference with the attorney-client privilege. Absent even a

12

scintilla of evidence to support his claim, Thomas fails to show that an evidentiary hearing is necessary to address his allegation.

Further, Thomas complained about the seizure of the letter on the day before trial in an attempt to obtain a continuance, even though the seizure occurred approximately two months earlier. The trial court reasonably could have concluded that Thomas simply was attempting to delay the trial. Under these circumstances, the trial court did not err in declining to hold an evidentiary hearing on alleged government misconduct.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

MELNICK, J.