IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34678-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAIME STEWART ANDREWS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jaime Andrews appeals from his conviction for possession of methamphetamine, challenging several actions taken by the investigating officers that the trial prosecutor rightly acknowledged as "incredibly sloppy police work." Since he cannot establish that he was prejudiced by the police actions, we affirm.

FACTS

Sunnyside Police Department Officer Christopher Sparks stopped a vehicle driven by Mr. Andrews, whom he suspected of driving while license suspended (DWLS), on April 19, 2016. Along with Mr. Sparks as a "ride-along" passenger was his wife, Jerrica Sparks. Ms. Sparks was employed as a trooper for the Washington State Patrol (WSP). She was not on duty for WSP while riding with Officer Sparks.

While pulling his car over in response to the officer's signals, Mr. Andrews threw an object from his window. Officer Sparks observed the object, which he believed was a glass pipe used for smoking methamphetamine. The officer asked Mr. Andrews if he had been smoking meth; Andrews replied in the affirmative. The officer arrested Andrews for DWLS and, in a search incident to that arrest, found a small "baggie" of suspected methamphetamine. While the officer was arresting Mr. Andrews, Ms. Sparks went and recovered the glass pipe from the roadway.

Ms. Sparks accompanied her husband and his prisoner to the police department and, while there, conducted a field test on both the pipe and baggie. The test results were positive for methamphetamine. The officer prepared an affidavit in support of a search warrant for Mr. Andrew's blood. The affidavit stated that Officer Sparks (rather than his wife) had recovered the pipe and conducted the field test. All evidence collected, other than the glass pipe (which was destroyed), was placed on evidence at the police department.

The prosecutor filed a charge of possession of methamphetamine based on the field test results. Despite notice that charges had been filed and a trial date set, the evidence was not transported to the state crime laboratory for confirmation. The State successfully obtained a continuance while awaiting the laboratory reports.

In the interim, Trooper Sparks was found to have lied to a supervisor on June 6, 2016, concerning a traffic stop she had conducted three days earlier. WSP advised the Washington Association of Prosecuting Attorneys of the finding. Trooper Sparks resigned her position with WSP prior to an administrative investigation into the incident.

Upon discovering that the suspected methamphetamine had still not been sent to the crime lab, the assigned deputy prosecutor had an officer drive the materials directly to the laboratory for immediate testing. The test results were reported back by e-mail late in the day, and the information was e-mailed to defense counsel the next morning. The July 25 trial date was reset to August 22; Mr. Andrews' speedy trial period expired on August 24.

The defense moved to suppress evidence or to dismiss charges due to governmental mismanagement. CrR 8.3(b). The argument focused on Trooper Sparks' participation in the evidence recovery and testing as well as the late transmission to the crime laboratory. After hearing testimony from Officer Sparks and former Trooper Sparks, the court denied the motion to suppress, concluding that the defendant had not established prejudice. A jury subsequently convicted Mr. Andrews of possession of a controlled substance.

The court imposed financial obligations totaling $1,950 on Mr. Andrews and sentenced him to serve 18 months in prison. He timely appealed to this court.

ANALYSIS

Mr. Andrews contends that the court erred in rejecting his CrR 8.3(b) motion. We agree with the trial court that Mr. Andrews failed to establish that governmental misconduct denied him a fair trial.

CrR 8.3(b) empowers a court to dismiss an action when, "due to arbitrary action or governmental misconduct," "there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." The trial court's rulings under CrR 8.3(b) are reviewed for abuse of discretion; the extraordinary remedy of dismissal is only appropriate when there has been such prejudice that no other action would ensure a fair trial. *State v. Garza*, 99 Wn. App. 291, 295, 994 P.2d 868 (2000). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Mr. Andrews attacks Trooper Sparks' participation in his case by retrieving the pipe and conducting the field tests on the suspected methamphetamine. He challenges the trial court's conclusions that it was reasonable for the officer to have the trooper retrieve the pipe and that it was not misconduct for her to conduct the field tests. The court also determined, and Mr. Andrews also challenges, that the "insertion of Mrs. Sparks into peripheral aspects of the criminal investigation had no material impact on the

chain of custody." Clerk's Papers at 94. He argues that there was a "cloud over the credibility" of Officer Sparks and Trooper Sparks.[1] Brief of Appellant at 14.

The challenged conclusions need not be separately discussed here since all of them are reflected in the ultimate conclusion that Mr. Andrews was not prejudiced by the actions of Trooper Sparks. It was his burden to establish actual prejudice to his ability to defend the case. *Garza*, 99 Wn. App. at 295. He has failed in that burden.

He does not suggest how his ability to defend the case was affected in any manner, let alone that it was so devastated by the actions of the two officers that he could not receive a fair trial. Instead, he simply focuses on trying to establish that the trooper's actions were wrong. Even that is a very hard sell. That a trained officer[2] retrieved evidence and field-tested the suspected controlled substances somehow contaminated the case simply because she was off duty and assisting another jurisdiction without authorization is a difficult argument to understand. But, even if that was wrongful conduct, Mr. Andrews does not explain how he was unable to defend the case due to the trooper's action. Her unauthorized intervention probably helped his case by giving him something to argue about. The actions of Officer Sparks also were presented at trial and

---

[1] This was not part of his argument at the CrR 8.3(b) hearing, but it was a basis for cross-examining Officer Sparks at trial. Report of Proceedings (Aug. 23, 2016) at 84-109.

[2] Even civilians have been known to assist police by turning over evidence they discovered or by assisting officers during emergencies. We know of no ban on civilian-obtained evidence, even if someone who is not a law enforcement officer becomes part of the chain of custody for evidence.

his credibility was clearly challenged in cross-examination. Report of Proceedings (Aug. 23, 2016) at 84-109. Those issues were presented to the jury—the body that decides credibility issues.

Moreover, as tried, the evidence shows that the trooper's involvement was harmless beyond a reasonable doubt. Having been destroyed earlier, the pipe was not presented at trial. The prosecutor expressly eschewed reliance on the residue from the pipe as the basis for the conviction, focusing solely on the baggie of methamphetamine and expressly asking the jury to return its verdict solely on that evidence. That evidence was totally untainted by the trooper's actions. Since the bag of methamphetamine was the sole basis for the jury's verdict, there simply was no harm to Mr. Andrews.

Having failed to satisfy his burden under CrR 8.3(b), Mr. Andrew's appeal lacks merit. Accordingly, the conviction is affirmed.[3]

---

[3] Mr. Andrews also asks that we waive appellate costs if the State substantially prevails. Since he has not complied with our general order regarding request to deny cost award by providing more comprehensive information about his financial circumstances, we decline his request. *See* Gen. Order of Division III, *In re Court Admin. Order re Request to Deny Cost Award* (Wash. Ct. App. June 10, 2016), http://www.courts.wa.gov /appellate_trial_courts/?fa=atc.genorders&div=III. However, the State has indicated it will not seek costs and, therefore, will not be filing a cost bill. Accordingly, Mr. Andrews will not end up paying any appellate costs since the State would be estopped from claiming them.

No. 34678-1-III
*State v. Andrews*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

7