# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

    Respondent,

    v.

TERRANCE JON IRBY,

    Appellant.

DIVISION ONE

No. 75901-9-I

OPINION PUBLISHED IN PART

FILED: April 16, 2018

DWYER, J. — Terrance Irby appeals from the judgment entered on a jury's verdicts finding him guilty of one count of murder in the first degree and one count of burglary in the first degree. Irby contends that the trial court erred by denying his motion to dismiss. This ruling was based on the trial court's finding that Irby did not establish prejudice arising from the actions of jail guards who opened and read written communications from Irby to Irby's lawyer. The trial court erred, Irby asserts, because it reached this conclusion without presuming that the constitutional violation was prejudicial and without holding the prosecution to its burden to present evidence sufficient to prove, beyond a reasonable doubt, that the presumption of prejudice was overcome and that the violation did not prejudice him.

We agree. Accordingly, we reverse the trial court's order denying Irby's motion to dismiss and remand this matter for further proceedings.[1]

I

In April 2005, Irby was charged with one count of burglary in the second degree, alleged to have occurred on March 6, 2005, and the following counts alleged to have occurred on March 8, 2005: one count of aggravated murder in the first degree with an alternative allegation of first degree felony murder, one count of burglary in the first degree, one count of robbery in the first degree, three counts of unlawful possession of a firearm in the first degree, and one count of attempting to elude a police vehicle. The latter charges arose out of the robbery and bludgeoning death of James Rock.

In January 2007, a jury found Irby guilty of murder in the first degree with aggravating circumstances, felony murder in the first degree, and burglary in the first degree. Four years later, the Washington Supreme Court reversed the judgment of conviction and remanded the cause for a new trial in light of the court's determination that Irby's due process rights had been violated during jury selection. See State v. Irby, 170 Wn.2d 874, 246 P.3d 796 (2011).

Irby's retrial was held in 2013. The State prosecuted the same charges that were brought during the first trial and Irby was convicted as charged. Notably, at the retrial, Irby was allowed to proceed pro se. He also voluntarily absented himself from the trial. We subsequently reversed the judgment of conviction and remanded the cause for yet another new trial because the trial

---

[1] In the unpublished portion of this opinion, Irby asserts additional claims that do not warrant appellate relief.

judge had erroneously seated a juror who had demonstrated actual bias against Irby during voir dire. See State v. Irby, 187 Wn. App. 183, 347 P.3d 1103 (2015), review denied, 184 Wn.2d 1036, 379 P.3d 953 (2016).

In March 2016, pretrial proceedings began for Irby's third trial. Attorney Jennifer Rancourt filed a notice of appearance on Irby's behalf. In mid-March, the State filed an amended information charging Irby with one count of premeditated murder in the first degree and one count of burglary in the first degree. Two days later, Irby appeared in court and was arraigned on the charges. He entered pleas of not guilty.

In mid-March and again in late March, Irby requested to represent himself. Following a colloquy with the trial court in mid-April, Irby's request was granted.

Four months later, Irby filed a pro se motion to dismiss the charges against him. In his motion, Irby alleged misconduct by jail guards, claiming that (during the period of time during which Ms. Rancourt represented him) they had improperly opened outgoing mail containing privileged legal communication intended for his attorney.

The trial court denied Irby's motion. The trial court did determine that the jail guards had violated Irby's right to counsel by opening and reading privileged attorney-client communications. Although Irby argued that the trial court's determination mandated that a presumption of prejudice be imposed, the trial court placed on Irby the burden of proving prejudice and concluded that he did not do so.

One month later, Irby informed the trial court that he had decided not to attend the trial and waived his right to be present at trial.

After a jury was selected without Irby's participation, the evidentiary stage of Irby's third trial began. Irby did not attend the trial. The State presented its case in chief and gave closing argument. No defense or closing argument were presented on Irby's behalf.

The jury returned verdicts finding Irby guilty as charged.

Irby was sentenced to concurrent terms of incarceration of 388 months for the murder in the first degree conviction and 54 months for the burglary in the first degree conviction.

## II

Irby contends that the trial court erred in denying his CrR 8.3(b) motion to dismiss.[2] Irby's contention has merit.

## A

This matter involves an alleged deprivation of a defendant's Sixth Amendment right. In order to determine whether such a deprivation occurred—and whether a remedy must issue—the inquiry proceeds as follows:

1. Did a State actor participate in the infringing conduct alleged by the defendant?

2. If so, did the State actor(s) infringe upon a Sixth Amendment right of the defendant?

---

[2] "We review the trial court's decision to deny a motion to dismiss under CrR 8.3 for abuse of discretion, that is, whether the decision was manifestly unreasonable, based on untenable grounds, or made for untenable reasons." State v. Kone, 165 Wn. App. 420, 433, 266 P.3d 916 (2011) (citing State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

3. If so, was there prejudice to the defendant? That is, did the State fail to overcome the presumption of prejudice arising from the infringement by not proving the absence of prejudice beyond a reasonable doubt?

4. If so, what is the appropriate remedy to select and apply, considering the totality of the circumstances present, including the degree of prejudice to the defendant's right to a fair trial and the degree of nefariousness of the conduct by the State actor(s)?[3]

In analyzing the matter before us, we bear this framework in mind.

1

To determine whether the trial court erred in denying Irby's motion to dismiss, we initially address whether a State actor engaged in misconduct.

"[T]he Sixth Amendment concerns the confrontation between the State and the individual." Michigan v. Jackson, 475 U.S. 625, 634, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), overruled on other grounds by Montejo v. Louisiana, 556 U.S. 778, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009).

Irby's motion to dismiss alleged that the confrontation between himself and the State involved conduct by jail guards employed by the county jail in which he was being housed. The trial court agreed. On appeal, neither party disputes that the jail guards were State actors.

Thus, Irby established that the conduct underlying his claim involved State actors.

---

[3] By contrast, when no State actor was involved in the alleged conduct, no State actor infringed upon a Sixth Amendment right, or no prejudice to the defendant arose from the infringement, a defendant has not been deprived of a Sixth Amendment right and no remedy need be applied.

-5-

2

Having established that Irby has implicated conduct by State actors, we next turn to whether the jail guards' conduct infringed upon his Sixth Amendment right.

> The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel, which includes the right to confer privately with that counsel. U.S. CONST. amend. VI. State intrusion into those private conversations is a blatant violation of a foundational right. We strongly condemn "the odious practice of eavesdropping on privileged communication between attorney and client." State v. Cory, 62 Wn.2d 371, 378, 382 P.2d 1019 (1963).

State v. Peña Fuentes, 179 Wn.2d 808, 811, 318 P.3d 257 (2014). Plainly, a defendant's Sixth Amendment right to assistance of counsel is violated when the State intrudes into a privileged attorney-client communication. By implication, a defendant's Sixth Amendment right is not necessarily infringed upon when the attorney-client information acquired by the State is not privileged.

This calls for us to initially determine whether the information exposed to the scrutiny of the jail guards included privileged attorney-client communications.

i

"The attorney-client privilege, codified in RCW 5.60.060, protects confidential attorney-client communications from discovery so clients will not hesitate to fully inform their attorneys of all relevant facts." Barry v. USAA, 98 Wn. App. 199, 204, 989 P.2d 1172 (1999) (citing Escalante v. Sentry Ins. Co., 49 Wn. App. 375, 393, 743 P.2d 832 (1987)).

> To qualify for attorney-client privilege, a communication must be made in confidence. Dietz v. John Doe, 131 Wn.2d 835, 849, 935 P.2d 611 (1997). The presence of a third person during the communication waives the privilege, unless the third person is

necessary for the communication, State v. Martin, 137 Wn.2d 774, 787, 975 P.2d 1020 (1999), or has retained the attorney on a matter of "common interest," Broyles v. Thurston County, 147 Wn. App. 409, 442, 195 P.3d 985 (2008).

Morgan v. City of Fed. Way, 166 Wn.2d 747, 757, 213 P.3d 596 (2009). Thus, if the information contained in an attorney-client communication is not confidential, the information is not protected by the attorney-client privilege.

Irby's motion to dismiss—and accompanying exhibits and addendum—alleged that he had sent 14 pieces of confidential correspondence containing privileged information to Rancourt that, he argued, had been improperly opened and read by jail guards in the Skagit County Jail. The correspondence constituted Irby's handwritten statements on both a "Public Defender Request Form" and jail kites—multi-purpose request forms available to inmates in the Skagit County Jail.

Irby's filings alleged that, prior to sending the correspondence, he had folded each piece of paper in half, sealed each piece of paper with tape, and written on the outward facing side, "CONFIDENTIAL," "RANCOURT," and "ATTORNEY BOX."[4]

---

[4] Presented in this manner, Irby's correspondence did not conform to the Skagit County Jail policy for inmate's outgoing legal mail.

> Kites, if used to communicate with assigned counsel, standby counsel, or a court-designated investigator, shall also be placed in an addressed and sealed envelope marked "Legal Mail." If the kite is not so placed and marked, it may be unfolded and/or read to identify the addressee and means of routing.

However, the trial court determined that the jail guards did not have a proper basis to open and read Irby's correspondence, notwithstanding this jail policy, because it was clear that Irby's correspondence identified the addressee (Rancourt) and the means of routing ("Attorney Box").

On appeal, the State does not challenge this determination by the trial court.

The parties did not dispute in the trial court nor do they dispute on appeal that the folded and taped pieces of paper were intended to be confidential and included privileged attorney-client information. Thus, the aforementioned correspondence from Irby to his counsel contained privileged attorney-client information protected by the Sixth Amendment.

ii

The next matter to address is whether the jail guards' opening and reading of Irby's privileged attorney-client correspondence infringed upon his Sixth Amendment right to counsel.

As indicated, government prying into privileged attorney-client communications is a "blatant violation" of the Sixth Amendment. Peña Fuentes, 179 Wn.2d at 811.

In beginning its analysis, the trial court stated:

> I'm going to be finding, and I could be wrong number wise, that 12 out of the 14 communications that we're talking about here were opened and time stamped by corrections deputies in the jail. The other two were not stamped. And, of course, subsequently could have been opened by the jail or not opened until they got to the receiving party. But by the time anyone saw them again they had already been opened. But 12 of the 14 were stamped and opened by the jail.

The trial court continued, "I am assuming that they were opened and opened incorrectly and that the contents were reviewed by the custodial branch of the Sheriff's Office."

The parties do not dispute the trial court's finding that jail guards had opened and read Irby's privileged attorney-client communications. Thus, the jail

guards—and therefore the State—infringed on Irby's Sixth Amendment right to counsel. This constitutes misconduct, within the meaning of CrR 8.3.

## 3

Having established that State actors engaged in governmental misconduct by reading privileged attorney-client communications, we now turn to whether Irby was prejudiced by the misconduct. We begin with analyzing the trial court's ruling that no prejudice resulted from the jail guards' misconduct.

## i

After determining that the jail guards had engaged in misconduct by opening and reading Irby's privileged attorney-client correspondence, the trial court stated:

> The next step is[,] having found that violation[,] does the presumption of prejudice immediately kick in? And I have reviewed the cases cited by both sides, and under these circumstances without any indication of the investigative branch involved or direct taping, listening into or obtaining by an investigator this information I simply can't make the connection automatically that this was provided to anyone in the Prosecutor's Office or anyone on the investigation side of the Sheriff's Office.

In this way, the trial court determined that it would not presume prejudice to Irby because no law enforcement "investigative" personnel were involved in the jail guards' infringing conduct.

In reaching this determination, the trial court emphasized what it perceived as a significant distinction between two types of State actors, law enforcement and jail security. In making this distinction, the trial court ostensibly reasoned that State misconduct by law enforcement is more likely to prejudice a defendant's fair trial right than is State misconduct by jail security. From this, the

trial court then reasoned that a presumption of prejudice must apply to misconduct by law enforcement but *not* to misconduct by jail security. Given that, the trial court surmised, the defendant must have the burden of proof to establish prejudice from the actions of jail security.

The trial court's reasoning was flawed.

More than half a century ago, our Supreme Court ruled that, when State actors pry into a defendant's privileged attorney-client communications, prejudice to the defendant *must* be presumed. Cory, 62 Wn.2d at 377, 377 n.3 ("[W]e must assume that information gained by the sheriff was transmitted to the prosecutor" and therefore "[t]here is no way to isolate the prejudice resulting from an eavesdropping activity, such as this."). Recently, our Supreme Court in Peña Fuentes reaffirmed this ruling and, in light of a State actor's eavesdropping on privileged attorney-client communications, imposed a presumption of prejudice. 179 Wn.2d at 818-20 (citing Cory, 62 Wn.2d at 377, 377 n.3).

But the trial court herein ignored these rulings and instead artificially distinguished between misconduct by law enforcement and misconduct by jail security. Such a distinction is recognized neither by our Supreme Court nor by this court. See, e.g., Peña Fuentes, 179 Wn.2d at 818-20 (presuming prejudice from misconduct by police detective); Cory, 62 Wn.2d at 377-78 (presuming prejudice from misconduct by sheriff, his officers, and prosecutor); State v. Perrow, 156 Wn. App. 322, 332, 231 P.3d 853 (2010) (presuming prejudice arising from misconduct by police detective and prosecutor); State v. Garza, 99 Wn. App. 291, 301, 994 P.2d 868 (2000) (presuming prejudice from misconduct

by jail guards); <u>State v. Granacki</u>, 90 Wn. App. 598, 603-04, 959 P.2d 667 (1998) (presuming prejudice from misconduct by police detective).

Indeed, where State intrusion into privileged attorney-client communications is at issue, "the defendant is hardly in a position to show prejudice when only the State knows what was done with the information gleaned." <u>Peña Fuentes</u>, 179 Wn.2d at 820. Hence, "[t]he State," as "the party that improperly intruded on attorney-client conversations," "must prove that its wrongful actions did not result in prejudice to the defendant." <u>Peña Fuentes</u>, 179 Wn.2d at 820. In this way, our decisional authority presumed prejudice not because of *which* State actor had engaged in misconduct but, rather, because *a* State actor—and therefore the State itself—infringed upon a defendant's Sixth Amendment right.

Because the State actors here at issue—jail guards—infringed upon Irby's Sixth Amendment right, prejudice must be presumed. Thus, the trial court erred by not imposing a presumption of prejudice after it determined that the jail guards had opened and read Irby's communications containing privileged attorney-client information.

ii

Irby next contends that the trial court erred by determining that he was not prejudiced by the jail guards' intrusion into his privileged attorney-client communications. The trial court erred, Irby asserts, because it did not require the State to establish beyond a reasonable doubt the absence of prejudice. Irby's contention has merit.

- 11 -

The presumption of prejudice arising from a determination that the State intruded into privileged attorney-client communications is rebuttable. Peña Fuentes, 179 Wn.2d at 819. Once the presumption is imposed, "the State has the burden to show beyond a reasonable doubt that the defendant was not prejudiced." Peña Fuentes, 179 Wn.2d at 819-20 (citing Granacki, 90 Wn. App. at 602 n.3).[5]

The trial court's ruling as to whether there was prejudice to Irby was as follows:

> The next step, of course, having found this to be a violation of inappropriately opening[,] is the contents therein. And from what I have been told today at today's hearing there was nothing in those contents, even if they had gone to the Prosecutor's Office and even if they were being directly used by the Prosecutor as some type of a bio mechanism [sic] that would have prejudiced Mr. Irby from any of the information I've heard of today. It certainly would be inappropriate should that have actually happened. And certainly we would then open probably a much stronger box of general prosecutorial misconduct. But I have no basis of fact before me to find that step ever occurred or that the contents of those letters such that Mr. Irby is prejudiced in the presentation of his case.

There is no indication that the trial court applied the beyond a reasonable doubt standard as set against a presumption of prejudice in evaluating whether Irby was prejudiced by the governmental misconduct. Rather, the trial court appears to have weighed the evidence on a more likely than not basis starting from a state of equipoise.

From this, we cannot determine that the trial court would have reached the same result had it required the State to rebut a presumption of prejudice beyond

---

[5] Such a showing is required, our Supreme Court instructed, because "[t]he constitutional right to privately communicate with an attorney is a foundational right. We must hold the State to the highest burden of proof to ensure that it is protected." Peña Fuentes, 179 Wn.2d at 820.

a reasonable doubt. Indeed, the existing record is insufficient to support only the conclusion that the State proved an absence of prejudice beyond a reasonable doubt. Had the correct burden and presumption been utilized, we cannot be certain as to how the trial court would have viewed the evidence.

Peña Fuentes is instructive. There, the court addressed whether, by submitting "a declaration stating that the detective on the case never communicated any information about the attorney-client conversations to the prosecution," the State proved beyond a reasonable doubt that Peña Fuentes was not prejudiced by the governmental misconduct of the prosecution's lead detective. Peña Fuentes, 179 Wn.2d at 811. The Peña Fuentes court determined that a declaration submitted by the prosecutor was insufficient to carry the State's burden. This was so, the court held, because the declaration did not address the possibility that the prosecutor had wittingly pursued the case in reliance on information obtained by the lead detective "as part of an investigation aided by the eavesdropping." Peña Fuentes, 179 Wn.2d at 822.

Here, in response to Irby's motion to dismiss, the State submitted a declaration in an attempt to disprove prejudice. The declaration read:

> I, Erik Pedersen, am a Senior Deputy Prosecutor with the Skagit County Prosecutor's Office. I have been the assigned prosecutor on Mr. Irby's case, since the time of his first direct appeal. As the assigned prosecutor, I would be informed of new information received by the prosecutor's office regarding the case.
> On July 20, 2016, I inquired of the lead detective on the case since before Irby's last trial, Detective Kay Walker, about whether she had received any information about communications between Irby and his counsel from jailers. She indicated "No one has shared any information at all from the jail kites. I have no idea what he sent, when or what about."

> I as prosecutor have also received no information from jailers at the Skagit County Jail regarding Mr. Irby's communication with his counsel.
>
> The only extent to which I am aware of the content of communications between Mr. Irby and his counsel is based upon the pleadings Mr. Irby filed with the trial court and a document that Mr. Irby had his investigator send to me. I stopped reading that document after I read the sentence beginning "Jon Ostlund went to Moses Lake" because it was apparent at that point that the pleading included communications with counsel. I have not read it further. I have reviewed the document further only so far as to see the dates on the documents and see if there are any jail stamps indicating receipt.

As an initial matter, the declaration does not set forth an attestation from Attorney Mary Ryan (the second prosecutor assigned to Irby's prosecution) that she had no communication with the jail guards regarding the information they gleaned from Irby's privileged attorney-client communications.

In addition, the declaration does not identify whether there were any other investigators assigned to Irby's prosecution (other than Detective Kay Walker) who might have communicated with the jail guards and gleaned privileged attorney-client information from the jail guards' misconduct. Indeed, if other investigators participated in Irby's prosecution, the State's declaration does not address whether those investigators had, unbeknownst to the lead detective and prosecutor, obtained information derived from the jail deputies' misconduct, used that information in their investigation of Irby, and/or forwarded those investigative materials to the lead detective or to the prosecutors.

Thus, the State's declaration did not eliminate the possibility that Irby's right to a fair trial was prejudiced by the jail guards' misconduct. Peña Fuentes,

179 Wn.2d at 822. We cannot say that the declaration established that the State proved beyond a reasonable doubt that Irby was not prejudiced.

iii

The trial court erred by denying Irby's motion to dismiss. On this record, the trial court properly determined that the jail guards constituted State actors for the purpose of Irby's governmental misconduct claim. Moreover, it properly reasoned that the jail guards had infringed upon Irby's Sixth Amendment right by opening and reading his privileged attorney-client communications.

However, the trial court erred when it reasoned that it was not required to impose a presumption of prejudice because a certain category of State actor (jail security) had infringed upon Irby's Sixth Amendment right. As indicated, the Sixth Amendment does not distinguish between State actors but, rather, "concerns the confrontation between *the State* and the individual." Jackson, 475 U.S. at 634 (emphasis added). In addition, we reiterate that our Supreme Court has instructed that a presumption of prejudice *must* follow from a State actor's infringement upon a defendant's Sixth Amendment right to counsel.[6] Peña Fuentes, 179 Wn.2d at 818-20; Cory, 62 Wn.2d at 377-78.

Furthermore, the trial court erred by not holding the State to its burden to prove the absence of prejudice beyond a reasonable doubt.

---

[6] The distinctions between a jail guard and a detective may manifest themselves at a hearing when the prosecution seeks to disprove prejudice beyond a reasonable doubt. That the miscreant was a jail guard—rather than the lead detective—may aid in this showing or make the presumption of prejudice easier to overcome. The trial judge was not wrong to recognize the distinction between the two jobs. Rather, the judge simply erred by viewing this as raising a legal issue (does the presumption of prejudice apply?) rather than an evidentiary one (do the job differences tend to make prejudice less likely?).

Accordingly, we reverse the order denying Irby's motion to dismiss. We remand this matter for an evidentiary hearing with instructions to the trial court.[7] See Peña Fuentes, 179 Wn.2d at 822; Garza, 99 Wn. App. at 301-02.

iv

On remand, the trial court must commence the hearing by presuming that the violation of Irby's right to counsel has prejudiced him. In addition, the trial court must place on the State the burden to prove "the absence of prejudice beyond a reasonable doubt." Peña Fuentes, 179 Wn.2d at 820. Thereafter, the trial court must marshal all of the evidence and determine whether the State's evidence has overcome the presumption of prejudice and established the absence of prejudice beyond a reasonable doubt.

It is at this stage of the proceeding that a trial court properly—and importantly—considers the role of the State actors who engaged in the misconduct. Indeed, the inquiry of the trial court on remand might involve determining whether the information gleaned by the jail guards was communicated to any member of the prosecution or investigation team and, if so, whether the information was utilized in the State's third prosecution of Irby.

At the conclusion of the evidence, if the trial court determines that the State's evidence overcame the presumption of prejudice, then Irby cannot be said to have been prejudiced by the infringing conduct and no deprivation of his

---

[7] The error identified does not, at this time, warrant vacation of the judgment and sentence.

- 16 -

Sixth Amendment right occurred. In that circumstance, denial of Irby's motion is proper and the judgment and sentence may be left undisturbed.

If, however, the State fails to overcome the presumption, then the infringing conduct constituted a deprivation of Irby's Sixth Amendment right. In such a situation, the trial court must fashion a proper remedy that includes vacation of the judgment and sentence previously imposed.

4

Where State conduct infringes upon a defendant's Sixth Amendment right and prejudice results to the defendant's right to a fair trial, the trial court must select and apply an appropriate remedy and, if necessary, an appropriate sanction.

CrR 8.3(b) sets forth the trial court's discretion in this regard. The rule reads, "The court . . . *may* dismiss any criminal prosecution due to . . . governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." (Emphasis added.) Thus, CrR 8.3(b) grants the trial court discretion to "fashion an appropriate remedy, recognizing that dismissal is an extraordinary remedy, appropriate only when other, less severe sanctions will be ineffective." Garza, 99 Wn. App. at 301-02 (citing Shillinger v. Haworth, 70 F.3d 1132, 1143 (10th Cir. 1995)).

If called upon to fashion a remedy on remand, the trial court should consider the totality of the circumstances, evaluating both the degree of prejudice to Irby's right to a fair trial and the degree of nefariousness of the conduct by the

State actors. This might include considering the motivations of the jail guards, Irby's failure to follow Skagit County Jail policies regarding outgoing legal mail, and the extent to which, if at all, Irby's privileged attorney-client communications were utilized by the State in its third prosecution of Irby or could be so utilized in the future.

In the event that the trial court determines that a remedy short of dismissal is warranted, vacation of the judgment will nevertheless be necessary. In addition, in anticipation of yet another trial, other remedies might include—singularly or in combination—suppression of evidence, disqualification of specific attorneys from Irby's prosecution, disqualification of the Skagit County Prosecuting Attorney's Office from further participation in the case, or exclusion of witnesses tainted by the governmental misconduct.

B

We reverse the trial court's order denying Irby's motion to dismiss and remand this matter with instructions set forth above.

The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.

III

Irby next contends that the trial court erred by commenting on the evidence during jury voir dire.

The Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

CONST. art. IV, § 16. This constitutional provision is violated when a judge's comments "imply to the jury an expression of the judge's opinion concerning disputed evidence, or express the court's attitude towards the merits of the cause." Hansen v. Wightman, 14 Wn. App. 78, 85, 538 P.2d 1238 (1975) (citing State v. Carothers, 84 Wn.2d 256, 267, 525 P.2d 731 (1974)); accord State v. Jacobsen, 78 Wn.2d 491, 495, 477 P.2d 1 (1970).

To constitute a constitutionally-offensive comment, the judge's opinion or attitude must be "reasonably inferable from the nature or manner of the questions asked and things said." Dennis v. McArthur, 23 Wn.2d 33, 38, 158 P.2d 644 (1945), overruled on other grounds by State v. Davis, 41 Wn.2d 535, 250 P.2d 548 (1952).

Here, the trial court sought to determine during voir dire if any of the prospective jurors in the jury pool had been involved in a burglary. The trial court began with a description of hypothetical burglaries, stating:

> Burglary is any entering unlawfully and committing a crime. So that could be anything from going into an open garage and taking some tools to, in this case, the charge is burglary in the first degree which involves either the element of a deadly weapon or somebody being injured in the process.
> I have a feeling many, many of you have probably lost property through some type of property crime.
> Mr. Pedersen, do you want me to inquire of that or do you want me to narrow it to where someone's actually been injured?
> MR. PEDERSEN: Actually, burglary where property has been taken.
> THE COURT: Okay. So have any of you suffered a burglary where someone has entered into a building or property and committed a crime, stolen something, damaged something, if you would raise your numbers.

Irby, granted pro se status, absented himself from voir dire. No objection was interposed.

The trial judge did not comment on the evidence adduced in Irby's criminal trial. As a preliminary matter, the evidence actually adduced by the State in support of the burglary charge was not based on Irby "going into an open garage and taking some tools" but, rather, was based on Irby going into a bedroom and removing firearms stored therein.

In addition, the trial court clearly instructed the jury venire that the purpose of its questions during voir dire was to identify biased jurors. The trial judge further instructed the seated jurors during trial to disregard any indication that he had indicated his personal opinion regarding the evidence adduced at trial.

Moreover, if other remedies could have been sought, Irby forfeited his right to request them by absenting himself from the proceeding.

Because the hypothetical burglary example given by the trial court during voir dire and the evidence relied upon by the State in support of its burglary charge were not the same and the jury was properly instructed, no reasonable juror would have believed that the trial judge was imparting his opinion or attitude toward the evidence during voir dire.

There was no error.

IV

Irby next contends that the trial court denied him a fair trial by not dismissing the jury venire after a prospective juror stated that he felt an inclination against Irby arising from Irby's first trial.

A criminal defendant has a constitutional right to be tried by an impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. 10); State v. Davis, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000). The decision to deny the request to dismiss the jury venire is within the sound discretion of the trial court, and we will not disturb that decision unless it was an abuse of discretion. State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). A trial court abuses its discretion if its decision is manifestly unreasonable, or based on untenable grounds or untenable reasons. State v. Bankston, 99 Wn. App. 266, 268, 992 P.2d 1041 (2000). The trial court is in the best position to determine whether a juror can be fair and impartial based on mannerisms, demeanor, and general behavior. State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

The purpose of voir dire is to allow parties to gain information, which enables them to challenge jurors for cause or to use peremptory challenges. State v. Frederiksen, 40 Wn. App. 749, 752, 700 P.2d 369 (1985). "The trial court's exercise of discretion is limited only by the need to assure a fair trial by an impartial jury." Frederiksen, 40 Wn. App. at 752 (citing United States v. Jones, 722 F.2d 528, 529 (9th Cir. 1983)).

During voir dire, the prosecutor indicated that he had no further general questions for the jury venire and the trial court responded:

> THE COURT: Okay. The only other point I want to ask all of you is -- and I don't want to emphasize this too much. But I've already indicated that Mr. Irby, who represents himself, has chosen not to be here.
> I need an honest assessment from all of you that you can be fair and impartial regardless of his nonappearance, that you will not hold that against him in any way.

Is anyone feeling uncomfortable with the ability to evaluate the testimony and the evidence and decide what did or didn't happen regardless of someone else sitting on the other side?

. . .

. . . No. 60?

JUROR 60: *From the summary I've heard, not that I judge, but I would lean more against him.*

THE COURT: Okay. I don't know how you could be leaning at all because you haven't heard any evidence. But I'm not trying to change your mind.

The job of a jury is to start with a blank slate, if you will, listen to the evidence and then make a decision about whether the State has proven its case or not. And if you feel somehow that you're not able to start with a presumption of innocence and see what the evidence shows or doesn't show, I'm not going to hold you in. I'm not trying to change your mind. You don't feel you can be fair then?

JUROR 60: *From his first case, of course that's -- I --*

THE COURT: All right.

JUROR 60: *I lean negative.*

THE COURT REPORTER: I'm sorry?

THE COURT: No, let's just leave that right there. I don't want him to repeat that comment either.

So Mr. Pineda, you are excused, Juror No. 60. I appreciate you being here. Please call the jury line Wednesday after 4:30. The Court has excused No. 60.

Anyone else?

All right.

(Emphasis added.) The trial court later identified Juror 60's utterance as a "passing comment," that "wasn't a very strong statement," and "could be subject to lots of interpretations."

As indicated, Irby absented himself from voir dire. No objection was interposed on his behalf.

There was no abuse of discretion. The trial judge promptly comprehended that Juror 60 had expressed a bias stemming from his knowledge of Irby's first trial. By immediately instructing Juror 60 to stop speaking and excusing him from

the jury venire, the trial judge accomplished the purpose of voir dire and thereby protected Irby's right to trial by a fair and impartial jury.

In addition, there is no indication that the jury venire was tainted by Juror 60's comment. Finally, if other remedies could have been sought, Irby forfeited his right to request them by absenting himself from the proceeding.

There was no error.

V

Irby next contends that the prosecutor engaged in misconduct by stating during closing argument that the evidence presented during trial and the elements of the charges brought against him were undisputed.

We hold pro se litigants to the same standards as attorneys. State v. Bebb, 108 Wn.2d 515, 524, 740 P.2d 829 (1987). Indeed, "[t]he right to waive counsel does not include a right to be immune from the consequences of self-representation." State v. DeWeese, 117 Wn.2d 369, 382, 816 P.2d 1 (1991).[8]

> When counsel does not object to a prosecutor's alleged misconduct, request a curative instruction, or move for a mistrial, appellate review of the prosecutor's conduct is precluded unless it was misconduct so flagrant and ill intentioned that no instruction could erase the prejudice engendered by it. State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988); State v. Dunaway, 109 Wn.2d 207, 221, 743 P.2d 1237 corrected, 749 P.2d 160 (1987). If unchallenged misconduct was so inflammatory that an instruction would not have cured it, reversal of the conviction is required if there is a substantial likelihood that the misconduct affected the jury's decision. Belgarde, 110 Wn.2d at 509-10; State v. Barrow, 60 Wn. App. 869, 876, 809 P.2d 209, review denied, 118 Wn.2d 1007, 822 P.2d 288 (1991).

---

[8] "'[C]ounsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for new trial or on appeal.'" State v. Russell, 125 Wn.2d 24, 93, 882 P.2d 747 (1994) (quoting Jones v. Hogan, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)).

State v. Fiallo-Lopez, 78 Wn. App. 717, 726, 899 P.2d 1294 (1995).

Here, prior to the prosecutor's closing argument, the trial court instructed the jury that, "[t]he defendant is not required to testify or be present at trial. You may not use the fact that the defendant has not testified or been present at trial to infer guilt or to prejudice him in any way." In presenting closing argument, the prosecutor began by conducting a lengthy review of the evidence presented in the case. Then, before addressing the elements of each charged crime, the prosecutor stated: "So what do we have? We have undisputed evidence in this case. There is no conflicting evidence against what you have been given, and the elements of the charges are undisputed."

Immediately thereafter, the prosecutor began to detail the elements of the charged crimes: "Now, when you decide the case, you have to decide the elements of the charges. That's your roadmap for how these crimes were committed." The prosecutor concluded by arguing that the State's case was supported by the evidence adduced at trial and the reasonable inferences therefrom.

Irby, having elected to represent himself, voluntarily absented himself from trial. No objection was interposed on his behalf during the prosecutor's closing argument.

Irby contends that the prosecutor's statements that the evidence and elements are undisputed constituted a comment on his election not to testify at trial.

> A prosecutor violates a defendant's Fifth Amendment rights
> if the prosecutor makes a statement "of such character that the jury

- 24 -

> would 'naturally and necessarily accept it as a comment on the defendant's failure to testify.'" State v. Ramirez, 49 Wn. App. 332, 336, 742 P.2d 726 (1987) (quoting State v. Crawford, 21 Wn. App. 146, 152, 584 P.2d 442 (1978), review denied, 91 Wn.2d 1013 (1979)). The prosecutor may say that certain testimony is undenied as long as he or she does not refer to the person who could have denied it. Ramirez, 49 Wn. App. at 336.

Fiallo-Lopez, 78 Wn. App. at 728-29; accord State v. Barry, 183 Wn.2d 297, 306, 352 P.3d 161 (2015) (citing Griffin v. California, 380 U.S. 609, 609-15, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)). "The prosecutor may also comment that evidence is undisputed when these comments are so brief and so subtle that they do not emphasize the defendant's testimonial silence." Ramirez, 49 Wn. App. at 336 (citing Crawford, 21 Wn. App. at 152). We presume that the jury follows the trial court's instructions. Barry, 183 Wn.2d at 306 (citing State v. Foster, 135 Wn.2d 441, 472, 957 P.2d 712 (1998)).

The prosecutor's statements did not constitute a flagrant and ill-intentioned comment on Irby's decision not to testify at his trial. In the two brief, challenged sentences in the middle of a lengthy closing argument, the prosecutor neither expressly identified Irby by name nor indicated that Irby had elected not to testify at trial. Given that, the prosecutor did "not emphasize the defendant's testimonial silence." Ramirez, 49 Wn. App. at 336 (citing Crawford, 21 Wn. App. at 152).

Moreover, there is no indication that the jury thought about the defendant's silence or choice not to testify. Barry, 183 Wn.2d at 308-09 (citing United States v. Elkins, 774 F.2d 530, 537 (1st Cir. 1985)). In addition, the jury was specifically

- 25 -

instructed not to infer guilt from Irby's decision not to attend his trial. There was no error.

Irby next contends that the prosecutor's statements that the evidence and elements are undisputed shifted the State's burden to prove guilt beyond a reasonable doubt.

> A criminal defendant has no duty to present evidence, and it is error for the prosecutor to suggest otherwise. State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). An argument that shifts the State's burden to prove guilt beyond a reasonable doubt constitutes misconduct. State v. Thorgerson, 172 Wn.2d 438, 453, 258 P.3d 43 (2011); State v. Gregory, 158 Wn.2d 759, 859-61, 147 P.3d 1201 (2006).
> However, a prosecutor is entitled to point out the improbability or lack of evidentiary support for the defense theory of the case. State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). A prosecutor has wide latitude to comment on the evidence introduced at trial and to draw reasonable inferences from the evidence. Thorgerson, 172 Wn.2d at 448. The "mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense." State v. Jackson, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

State v. Osman, 192 Wn. App. 355, 366-67, 366 P.3d 956 (2016).

The prosecutor's statements did not constitute a flagrant and ill-intentioned comment that shifted the State's burden of proof. By indicating that the evidence in the case and the elements of the charged crimes were undisputed, the prosecutor was merely pointing out the lack of evidentiary support for Irby's general denial defense.

Moreover, if other remedies could have been sought, Irby forfeited his right to request them by absenting himself from the trial.

- 26 -

Irby does not demonstrate that the prosecutor engaged in flagrant and ill-intentioned misconduct. There was no error.[9]

## VI

Irby submits on appeal an "informal brief of pro se appellant," which we analyze as a pro se statement of additional grounds for relief pursuant to RAP 10.10. Each of his claims are discussed in turn.

Irby contends that the trial court deprived him of his right to due process during a hearing on August 12, 2016 by denying him the opportunity to read his motions into the record and by demanding that he summarize his motions.

The record from the August 12 hearing does not support Irby's contention. He was allowed to read at length from his motion to dismiss, the trial court did not demand that he summarize his motions, and the trial court afforded him ample time to argue his position. There was no error.

Irby next contends that the trial court erred by denying his Brady motion because the State did not disclose Federal Emergency Management Agency files that, he argues, were relevant to whether there was "a robbery/homicide motive to the crime." In a criminal case, the prosecution must disclose to the defense any evidence that is favorable to the accused and material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Irby does not explain how this evidence is material to the purpose for which he sought to use it. Irby's claim fails.

---

[9] Irby's appellate briefing also contends that the cumulative error doctrine mandates reversal. As indicated, the trial court erred by not presuming that Irby was prejudiced in analyzing his CrR 8.3(b) motion. However, no further trial court error occurred. Thus, Irby's cumulative error contention fails.

Irby next contends that the State was judicially estopped from disputing whether the trial court should hold an evidentiary hearing regarding the facts underlying Irby's motion to dismiss. This is so, Irby avers, because the State suggested that the trial court hold an evidentiary hearing and, one month later, suggested that the trial court not do so. However, a trial court's "[a]cceptance of an initial position is a precondition to the application of judicial estoppel." Taylor v. Bell, 185 Wn. App. 270, 284, 340 P.3d 951 (2014). The trial court herein did not accept the State's position during the July hearing but, rather, delayed determining whether to hold an evidentiary hearing until the hearing in August. There was no error.

Irby next contends that he was deprived of his right to effective assistance of counsel because his attorney neither investigated his accusations that his legal correspondence was being read by jail guards nor sent him a sufficient number of envelopes into which he could deposit the legal correspondence he wished to mail to her.

To show the prejudice required to prevail on a claim of ineffective assistance of counsel, Irby must establish that a reasonable probability exists that, but for his counsel's failure to conduct an investigation into the opening of the jail kites and failure to send him additional mailing envelopes, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Irby does not demonstrate that the result of the proceeding would have been different had his counsel investigated the opening of jail kites or sent him

additional envelopes. Notably, two weeks after the jail kites had been opened by the jail guards, Irby's request to proceed pro se was granted. Irby does not demonstrate that, during that two week period, an investigation by his counsel would have uncovered information that would have probably changed the outcome of his trial. Moreover, Irby does not establish that his counsel had a duty to send him envelopes nor does he establish that, had he obtained additional envelopes, the result of the trial would probably have been different.

Accordingly, Irby does not satisfy the prejudice prong of the Strickland test.[10]

The judgment is affirmed but the order denying the CrR 8.3 motion is reversed; the cause is remanded for further proceedings.

We concur:

_____

[10] Irby also contends that the trial court erred by denying his motion to dismiss. This issue was raised and well-argued by Irby's counsel on appeal.