THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80259-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEITH RAWLINS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Keith Rawlins appeals his convictions for drive by shooting, two counts of assault in the first degree, three counts of unlawful possession of a firearm, hit and run, possession of methamphetamine and heroine, and possession of methamphetamine with intent to deliver. Rawlins argues the trial court committed several errors, including failing to hold an evidentiary hearing on his claim that jail staff intercepted attorney-client communications resulting in the violation of his Sixth Amendment right to privately confer with counsel. We remand for an evidentiary hearing on this issue. We also remand for the trial court to correct the errors the State concedes and to consider what effect, if any, the Supreme Court's recent decision in State v. Blake, No. 96873-0, slip op. (Wash. Feb. 25, 2021), https://www.courts.wa.gov/opinions/pdf/968730.pdf, has on

Citations and pin cites are based on the Westlaw online version of the cited material.

Rawlins's drug possession convictions and his sentence for the remaining convictions.

FACTUAL BACKGROUND

A jury convicted Keith Rawlins of drive-by shooting, two counts of assault in the first degree with a firearm enhancement, three counts of unlawful possession of a firearm, hit-and-run injury accident, possession of methamphetamine with intent to manufacture or deliver, possession of methamphetamine, and possession of heroin.

These convictions stem from a March 19, 2018 shooting in Burlington, Skagit County, Washington. That evening, several witnesses in the area of Cascade Mall, including one police officer driving to work, reported seeing a red Dodge Caravan chasing a Dodge Caliber, followed by the sound of gunshots. Responding officers located the crashed and abandoned Dodge Caliber in a nearby field. They observed cash blowing out of the vehicle in the wind, a bullet hole in the rear of the car, a digital scale, two "baggies" of what officers presumed to be narcotics, and a single shoe on the ground next to the car.

Shortly thereafter, police received a call from a nearby resident reporting two injured teenagers, later identified as James Flores and Justice Connell, appeared at their house and needed police assistance.

Connell testified that on the night of March 19, he and Flores had driven from Bellingham to Burlington and met up with two acquaintances to buy marijuana from someone he knew by the name "Keith." Connell identified Rawlins as this individual in a photo lineup and at trial.

The four teenagers, with Connell driving and Flores in the passenger seat, met Rawlins at the Cascade Mall parking lot that night. Connell saw Flores get into Rawlins's red Dodge Caravan. Flores returned to the Caliber a short time later, then returned to the Caravan with one of his friends. When Flores and the friend returned, Flores told Connell to drive. When Connell stopped at a stop sign in the parking lot, Rawlins, driving the Caravan, rammed the Caliber from behind. Connell then sped through a red light with the van in pursuit.

Witnesses testified they saw the Caravan chasing the Caliber in a residential area and saw the sliding door of the van open. They then heard at least two gunshots. One bullet struck the passenger side door without entering the vehicle. Another entered the Caliber next to the rear license plate, traveled through the trunk and backseat and entered the front dashboard.

Connell testified he was driving so fast he was unable to maneuver a corner and crashed the Caliber into a fire hydrant, causing the car to roll, and land in a field. Connell and Flores separated from the other two passengers, fled the Caliber, and ran into an adjacent residential area where they waited for police to arrive. A security camera of a nearby business captured the van's occupants as they got out to look into the abandoned Caliber before driving off.

Flores was later taken by ambulance to United General Hospital for a foot contusion and other minor injuries.

Based on the information provided by Connell and Flores, officers identified Rawlins as the suspect and traced him to an address in Whatcom County at 801 East Axton Road, where he lived with his wife, Jantina Sellers, in a 27-foot travel

trailer. Police served a warrant to search the property and arrested Rawlins the following day, March 20, 2018.

Police found a red Dodge Caravan on the premises, consistent with eyewitness descriptions of the vehicle involved in the previous night's shooting. The van had damage to the front of the vehicle consistent with the impact to the Caliber described by Connell and Flores. In the Caravan, police recovered Rawlins's Washington ID, a ledger of drug transactions, and several nine millimeter bullets and magazine.

In the trailer, police found baggies of various controlled substances including methamphetamine and heroine, digital scales, and documents indicating Rawlins's control over the trailer. Police also recovered a rifle and a shotgun in a closet in the trailer. In an open safe at the opposite end of the trailer, police found a Springfield handgun sitting on top of documents addressed to Rawlins. The gun was loaded with nine-millimeter Luger rounds, which matched casings found at the scene of the shooting. The casings and the bullet pulled from the Caliber's dashboard were later matched to the Springfield firearm.

At Rawlins's July 11, 2019 trial confirmation hearing, Rawlins complained to the court that he was receiving ineffective assistance of counsel, listing numerous complaints against defense counsel. One complaint was that defense counsel had refused to file a CrR 8.3(b) motion to dismiss based on the jail staff's alleged interception of attorney-client mail. Defense counsel stated that he believed he had no basis for filing such a motion. The court denied the motion, finding Rawlins's disagreement with counsel to involve trial strategy.

Rawlins raised the issue again before voir dire, this time alleging the State had intercepted documents related to trial strategy. In response, defense counsel stated that, after reviewing relevant case law, it was his belief that "we would not be able to show the kind of record that would demonstrate the kind of prejudice that would make this kind of a motion successful." He further explained that Rawlins's complaints stemmed from a document defense counsel had copied and returned to the jail at Rawlins's request, but was without information on its contents or the State's interception of the documents.

Rawlins described the document as "a four-page letter that . . . had places, and dates, and several names [of potential witnesses]." He confirmed that he had given defense counsel the document on March 14, 2019 and requested copies the following day, a Friday. When he did not receive the copies by Monday, Rawlins called defense counsel, who then spoke to Sergeant Story at the jail. Story informed defense counsel that the documents were "discovery" and not to be given to the inmates. The prosecutors denied any knowledge of the document.

The court denied Rawlins's motion for a CrR 8.3 hearing, stating "I just don't have enough information at this point in time to validate these issues" and further found defense counsel had rationally justified his strategic decisions.

Rawlins was found guilty of eleven counts and sentenced to 448 months. He argues on appeal, among other things, that the State violated his Sixth Amendment right to counsel by intercepting attorney-client privileged communications. U.S. CONST. amend. VI.

In addition, in its briefing before this court, the State has conceded certain errors relating to Rawlins's sentence, and at oral argument, conceded that Blake

would require the court to vacate Rawlins's possession of methamphetamine and heroin convictions.

ANALYSIS

Rawlins argues the trial court erred in failing to hold an evidentiary hearing to determine whether the jail had impermissibly intercepted attorney-client privileged mail. Because there is an insufficient record upon which to review the issue, we remand for an evidentiary hearing under RAP 9.11.

The Sixth Amendment guarantees a criminal defendant the right to privately confer with counsel. State v. Peña Fuentes, 179 Wn.2d 808, 811, 318 P.3d 257 (2014). This court applies a four-step inquiry into the question of whether a defendant's Sixth Amendment rights have been violated, asking:

1. Did a state actor participate in the infringing conduct alleged by the defendant?

2. If so, did the state actor(s) infringe on a Sixth Amendment right of the defendant?

3. If so, was there prejudice to the defendant? That is, did the State fail to overcome the presumption of prejudice arising from the infringement by not proving the absence of prejudice beyond a reasonable doubt?

4. If so, what is the appropriate remedy to select and apply, considering the totality of the circumstances present, including the degree of prejudice to the defendant's right to a fair trial and the degree of nefariousness of the conduct by the state actor(s)?

State v. Irby, 3 Wn. App. 2d 247, 252-53, 415 P.3d 611 (2018).

Based on the record before us, there is evidence indicating that the State intercepted a piece of attorney-client communication. Rawlins described with particularity a letter he authored that discussed possible trial witnesses and their contact information. Counsel acknowledged he had received the letter, copied it

- 6 -

for his file, and returned the original to the jail to be delivered to Rawlins. After that point, we cannot determine what happened to this letter. There is some indication jail staff intercepted it and refused to deliver it to Rawlins, believing it to be discovery materials. The State contends the four-page letter and the withheld discovery are two different pieces of mail.

Irby is instructive here. In that case, the defendant moved to dismiss the charges against him after jail guards opened outgoing mail intended for his attorney. Id. at 251. The trial court denied the motion, finding that Irby had failed to prove prejudice resulting from the interception. Id. at 251-52. This court reversed, concluding that jail guards are state actors and that any state intrusion into attorney-client privileged communications must be presumed prejudicial to a defendant. Id. at 257-58. This court reversed the order denying Irby's motion and remanded to the trial court with detailed instructions on examining the evidence to determine whether the State could overcome the presumption of prejudice by demonstrating that nothing contained in Irby's letters to counsel had ever been communicated to the prosecution or investigation team. Id. at 263.

Here, the State does not dispute that the jail is a state actor, but argues that the jail guards did not infringe on Rawlins's Sixth Amendment right because the record contains no evidence other than Rawlins's own assertions that the guards intercepted attorney-client privileged communications. The State points to the fact that, although Rawlins claims the documents contained information related to trial strategy, defense counsel had no recollection of their contents and the jail guards, when confronted by defense counsel, characterized the missing documents as "discovery."

- 7 -

But there is simply insufficient information in the record to fairly determine whether the State intruded on Rawlins's right to privately confer with counsel and Rawlins's proffer, as corroborated by his attorney, are sufficient to merit an evidentiary hearing on his claim.

RAP 9.11 allows this court to direct additional evidence be taken in a case where:

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a).

Rawlins stated on the record that he had drafted a four-page letter to his attorney laying out his trial strategy ideas. Defense counsel recollected receiving and copying such a letter and believed he retained a copy in his files. Both were able to identify the specific day in March when this interaction occurred. Rawlins explained how he had raised a concern with the jail and defense counsel had talked to Sergeant Story at the jail regarding the allegedly missing mail. Defense counsel indicated that Sergeant Story informed him the jail had intercepted something it believed to be discovery materials. Defense counsel indicated Sergeant Story may have mischaracterized the mail as "discovery."

The trial court did not, at that stage, ask defense counsel to locate the copy of this letter he had in his files (in order to verify that the missing letter was in fact an attorney-client privileged communication), did not ask Sergeant Story or any

- 8 -

other member of the jail staff to clarify what the jail had actually intercepted (in order to determine if what the jail took was different from the four-page letter Rawlins claims is missing), and did not ask the State's lead investigator to verify that nothing contained in any correspondence from Rawlins to his counsel was communicated to him by any jail staff (in order to determine if the State can overcome any presumption of prejudice).

Without findings of fact under Irby, we cannot fairly conclude whether the letter contains privileged communications and, if so, whether the jail staff intruded upon those communications. It could be that Sergeant Story intercepted actual discovery, and not a letter Rawlins wrote to his attorney. That letter could simply have been misplaced. Or it is possible that even if the jail actually intercepted Rawlins's letter, there is nothing privileged in it. And if the jail staff did in fact intercept attorney-client communications and the State cannot overcome the presumption of prejudice, it should be the trial court that determines in the first instance what remedy would be appropriate, considering the totality of the circumstances. We conclude an evidentiary hearing under RAP 9.11 is the most prudent route at this stage of Rawlins's appeal.

We therefore remand this matter to the trial court for an evidentiary hearing to address the factual and legal questions laid out in Irby and, if necessary, to fashion an appropriate remedy. The trial court shall conduct this hearing within 60 days of the filing of this opinion (or as soon as reasonably possible given the current state of the COVID-19 pandemic) and shall enter its findings of fact and conclusions of law within 30 days of the conclusion of that hearing.

If the trial court rejects Rawlins's Sixth Amendment claim, we ask the trial court to conduct a new sentencing hearing to consider the effect, if any, of <u>Blake</u> on Rawlins's drug possession convictions, and to address the other errors conceded by the State on appeal.[1]  Pursuant to RAP 7.2, we authorize the trial court to modify Rawlins's judgment and sentence, if necessary.

The State shall notify this court of the outcome of the evidentiary and resentencing hearing within 30 days of the last hearing and shall be responsible for transmitting the record from the hearing to this court.  We will determine at that time what, if any, supplemental briefing may be necessary to address the Sixth Amendment claim, the other errors Rawlins has raised in his appeal, and any other assignments of error either party may raise as a result of the hearing on remand.

_Andrus, A.C.J._

WE CONCUR:

_____          _____

---

[1] For example, the State concedes that Rawlins's convictions for both simple possession of methamphetamine and possession with intent to deliver methamphetamine violate the prohibition against double jeopardy and the methamphetamine possession conviction must be vacated.  <u>See</u> <u>State v. O'Connor</u>, 87 Wn. App. 119, 126, 940 P.2d 675 (1997) (holding that a defendant cannot be convicted of both possession and possession with intent to deliver where the offenses are based on the same act).  The judgment and sentence also states that Rawlins may "not frequent establishments where alcohol is the chief commodity for sale," and must "pay supervision fees as determined by DOC."  The State concedes that these conditions were erroneously included in the judgment and sentence and must be stricken.  The court may, on remand, strike this condition from Rawlins's judgment and sentence.