IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79914-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BYRON CHARLES KOELLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Byron Koeller sexually abused his stepdaughter for years. He was convicted of multiple charges, including first degree child molestation.

He contends the charges against him should have been dismissed under CrR 8.3(b) due to governmental misconduct from destroying evidence and from listening to eight seconds of a conversation with defense counsel. Neither the evidence nor the eight seconds of conversation were material to his defense. Because neither act prejudiced him, the court did not abuse its discretion by denying his motions to dismiss.

He argues his defense counsels were ineffective for a variety of reasons. Because their decisions were neither deficient nor prejudicial, he fails to show he received ineffective assistance.

He contends the prosecutor committed misconduct during closing argument. Because the arguments were not improper or prejudicial, Koeller fails to establish prosecutorial misconduct. And, even if improper, because he did not object to the arguments and none were flagrant or ill intentioned, he has waived these issues.

Therefore, we affirm.

## FACTS

A.R.C. first met her future stepfather, Byron Koeller, when she was four years old. Koeller soon began sexually abusing A.R.C. Koeller was in the Navy, and he abused A.R.C. at least once per month when he was home from deployment. The abuse became more sporadic as she got older and stopped when she was a teenager.

A.R.C., now in her 20s, first reported the abuse to law enforcement in 2017. Koeller was charged with one count of forcible compulsion, four counts of first degree child molestation, two counts of second degree child molestation, and one count of third degree child molestation. The State also alleged aggravating circumstances of domestic violence and of an ongoing pattern of sexual abuse. Pretrial, Koeller made two CrR 8.3(b) motions to dismiss for governmental misconduct, and the court denied both.

At trial, the State called only two witnesses: A.R.C. and the naval criminal investigative service special agent who investigated the allegations. Koeller entered a general denial and declined to call any witnesses. During

closing arguments, the prosecutor conceded the State failed to prove the charge of third degree child molestation because A.R.C. never testified she was molested between the ages of 14 and 16, and he asked the jury to find Koeller not guilty of that charge. He also argued the jury should question each side's theory of the case because "the truth does not fear analysis."[1] The jury found Koeller guilty on all counts, except for third degree child molestation, and found the aggravating factors applied as well. The court sentenced him to 297 months' incarceration.

Koeller appeals.

ANALYSIS

I. CrR 8.3(b) Motions to Dismiss

A court may dismiss a charge against a defendant under CrR 8.3(b) when the defendant shows arbitrary action or misconduct by the government prejudiced his right to a fair trial. Dismissal is an "extraordinary remedy" that should be granted "only as a last resort."[2] We review a court's decision on a CrR 8.3(b) motion to dismiss for abuse of discretion.[3] A court abuses its discretion where its decision rests on untenable grounds or was made for untenable reasons.[4]

---

[1] Report of Proceedings (RP) (Apr. 5, 2019) at 961.

[2] State v. Brooks, 149 Wn. App. 373, 384, 203 P.3d 397 (2009) (citing State v. Wilson, 149 Wn.2d 1, 12, 65 P.3d 657 (2003)).

[3] Id. (citing State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

[4] Id. (citing Blackwell, 120 Wn.2d at 830).

Koeller contends the court abused its discretion when it denied two CrR 8.3(b) motions to dismiss. The first related to the destruction of a recording of an interview A.R.C. gave in 2007 where she denied Koeller molested her. The second related to discovering that the jail had recorded a phone call between Koeller and defense counsel and that a prosecutor had listened to a tiny piece of it. The court denied both motions after holding hearings and entering findings of fact.

A. The Destroyed Recording

In 2007, A.R.C. was interviewed by Detective Teri Gardner of the Oak Harbor Police Department as part of a separate investigation into allegations Koeller sexually abused other children. A.R.C. disclosed no sexual abuse and denied Koeller sexually abused her. The police department recorded and stored the interview on a digital video disc (DVD) until 2012, when it was destroyed pursuant to routine procedures. Koeller contends the recording was materially exculpatory evidence, so its destruction violated his due process rights and warranted dismissal of all charges against him.

To protect a defendant's due process rights, the State has a duty to preserve and disclose exculpatory evidence.[5] But this is not "'an undifferentiated and absolute duty to retain and to preserve all material that

_____

[5] State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994) (citing California v. Trombetta, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984); Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963)).

might be of conceivable evidentiary significance in a particular prosecution.'"[6] The State's duty extends only to material exculpatory evidence and to "potentially useful" evidence destroyed in bad faith by the State.[7] Material exculpatory evidence must possesses "'an apparent exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'"[8] Whether the State acted in bad faith depends upon its knowledge of the exculpatory value of the evidence when it was destroyed.[9]

Koeller fails to show the recording was material exculpatory evidence. The DVD was destroyed in 2012, and A.R.C. did not disclose being abused until 2017. Thus, in 2012, the recording could not exculpate Koeller from abusing A.R.C. because nothing had inculpated him in her abuse. Even though the police were investigating Koeller for crimes against other children before 2012, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not

---

[6] State v. Armstrong, 188 Wn.2d 333, 345, 394 P.3d 373 (2017) (internal quotation marks omitted) (quoting id.).

[7] Id. (quoting Wittenbarger, 124 Wn.2d at 477) (internal quotation marks omitted).

[8] Id. (quoting Wittenbarger, 124 Wn.2d at 475).

[9] State v. Groth, 163 Wn. App. 548, 557-58, 261 P.3d 183 (2011) (citing Arizona v. Youngblood, 488 U.S. 51, 109 Sup. Ct. 333, 102 L. Ed. 2d 281 (1988); Wittenbarger, 124 Wn.2d at 477).

establish 'materiality' in the constitutional sense."[10]  Koeller also asserts we should determine the DVD's exculpatory value "based on when the alleged victim decides to make a report."[11]  But he cites no authority for this assertion and, regardless, both the Washington and United States Supreme Courts concluded it is beyond the duty imposed by the state and federal constitutions.[12]  Because the DVD had no apparent exculpatory value when it was destroyed, it was not material.[13]

Koeller also fails to show the State destroyed the DVD in bad faith. Koeller contends "delayed reporting is such an inherent and common reality in child abuse cases" that destruction of the 2007 video should be considered evidence of bad faith because it was made when there were concerns Koeller had multiple victims.[14]  Whether the State acted in bad faith is a question of fact

---

[10] United States v. Agurs, 427 U.S. 97, 109-10, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), holding modified by United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

[11] Appellant's Br. at 18 (emphasis omitted).

[12] See Wittenbarger, 124 Wn.2d at 475 (exculpatory evidence is material where its value "was apparent before it was destroyed") (citing Trombetta, 467 U.S. at 489).

[13] Even if the DVD's exculpatory value were apparent in 2012, Koeller was still able to obtain comparable evidence because A.R.C. testified to the contents of the 2007 interview, and Detective Gardner was available to testify to the same.  See RP (Apr. 4, 2019) at 790-93 (A.R.C.); RP (Mar. 28, 2019) at 125 (Gardner).

[14] Appellant's Br. at 22.

that a defendant must establish.[15]  The trial court found "there ha[d] been no

bad faith on the part of the police or of the State of Washington generally" in

destroying the DVD.[16]  Koeller does not assign error to this finding.[17]  Because

the DVD was not material exculpatory evidence or destroyed in bad faith,

Koeller fails to show the court abused its discretion by denying his CrR 8.3(b)

motion to dismiss.

### B. The Recorded Jail Call

The Island County jail records incoming and outgoing phone calls,

except for calls from attorneys.  On October 11, 2017, defense counsel Craig

Platt provided his cell phone number to the Island County jail so the automated

recording system would not record any calls made between him and Koeller.

The jail failed to do so.  The next day, Island County chief criminal deputy

prosecutor Eric Ohme checked the automated recording system and saw

---

[15] See Armstrong, 188 Wn.2d at 345 ("A plaintiff must 'put forward specific, nonconclusory factual allegations that establish'" bad faith.) (quoting Cunningham v. City of Wenatchee, 345 F.3d 802, 812 (9th Cir. 2003)).

[16] RP (Mar. 21, 2019) at 37.

[17] Koeller appears to challenge the court's bad faith finding in his reply brief by arguing the State violated RCW 40.14.070 when it destroyed the DVD, requiring a finding of bad faith. See Reply Br. at 3-5, 13-14.  Evidence of compliance with a record retention policy establishes good faith.  Armstrong, 188 Wn.2d at 345.  Whether the Oak Harbor Police Department complied with its own 2012 record retention policy is a separate question from whether that policy complied with RCW 40.14.070.  Koeller cites no authority showing failure to comply with a statute distinct from an internal policy establishes bad faith as a matter of law.  Because the court found the DVD was destroyed pursuant to the Oak Harbor Police Department's routine procedures and Koeller does not challenge that finding of fact, his argument is not persuasive.

Koeller made an outgoing, 15-minute phone call to Lisa Nagle that day. Ohme began playing the call and heard Platt's voice, so he shut off the recording. Ohme heard only eight seconds of the phone call. He immediately told Platt about the recording and told the jail to register Platt's phone number because it had failed to shield Platt from being recorded. On March 26, 2019, about one week before the scheduled start of trial, Koeller filed a CrR 8.3(b) motion to dismiss as a result of the recording. The court denied the motion. In its ruling, the court found no one else "in connection with the State of Washington listened to the conversation."[18]

Koeller contends the court abused its discretion by denying his motion to dismiss because Island County jail chief Jose Briones did not testify, making it "untenable to conclude that no other person listened to the conversation."[19] Although he does not assign error to that specific finding of fact, we construe his argument as challenging it as lacking substantial evidence. Substantial evidence supports a finding of fact where a sufficient quantity of evidence exists to persuade a reasonable person of its truth.[20] Unchallenged findings are verities on appeal.[21]

---

[18] RP (Apr. 2, 2019) at 194.

[19] Appellant's Br. at 33.

[20] State v. Hatt, 11 Wn. App. 2d 113, 145, 452 P.3d 577 (2019) (quoting State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)), review denied, 195 Wn.2d 1011 (2020).

[21] State v. Jieta, 12 Wn. App. 2d 227, 229 n.1, 457 P.3d 1209 (2020) (citing State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018)), review denied, 195 Wn.2d 1026 (2020).

Ohme testified he heard Koeller say, "Hello," heard Platt reply, "Let me take you off speaker phone," and immediately stopped the recording.[22] He estimated hearing about eight seconds of the call. Ohme shared none of what he heard. An access log from the recording system showed only Ohme accessed that recording. From this, a reasonable factfinder could conclude Ohme heard nothing of substance and that no one else from the State heard the phone call.[23] The remaining issue, which we review de novo, is whether the court's findings supported its legal conclusion.[24]

A criminal defendant has a constitutional right to confer privately with defense counsel.[25] Where the government violates this right, it creates a rebuttable presumption of prejudice to the defendant.[26] Because it is undisputed the government violated Koeller's right to confer privately with counsel, the question is whether he was not prejudiced by the violation.

In State v. Irby, an inmate awaiting trial alleged guards in the Skagit County jail opened and read legal correspondence sent to defense counsel.[27] Each item had been taped shut and marked as correspondence to defense

---

[22] RP (Apr. 2, 2019) at 166.

[23] Hatt, 11 Wn. App. at 145 (quoting Hill, 123 Wn.2d at 644).

[24] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (citing State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008)).

[25] State v. Peña Fuentes, 179 Wn.2d 808, 818, 318 P.3d 257 (2014) (citing State v. Cory, 62 Wn.2d 371, 373-74, 382 P.2d 1019 (1963)).

[26] Id. at 819-20 (citing State v. Granacki, 90 Wn. App. 598, 602 n.3, 959 P.2d 667 (1998)).

[27] 3 Wn. App. 2d 247, 255, 415 P.3d 611 (2018).

counsel.[28] The guards opened and read at least 12 of the 14 items.[29] This court concluded the State failed to prove the inmate had not been prejudiced, but it remanded for reconsideration because the trial court applied the wrong standard when dismissing the inmate's CrR 8.3(b) motion.[30]

In State v. Blizzard, staff at the Yakima County jail confiscated an inmate's paperwork during a routine security sweep.[31] The paperwork included significant legal documents, including trial preparation materials, discovery materials, and defense memoranda.[32] The inmate made a CrR 8.3(b) motion to dismiss, and the trial court denied it.[33] The trial court found the jail staff never looked closely at the paperwork to learn its contents or provided any of it to police or prosecutors.[34] Because the trial court's unchallenged findings showed no possibility of prejudice to the inmate, the appellate court affirmed.[35]

Here, the court's findings establish Ohme heard only eight seconds of the call between Koeller and his attorney.[36] He heard "no substance of the conversation" and no one else "in connection with the State of Washington

---

[28] Id.

[29] Id. at 256.

[30] Id. at 262-63.

[31] 195 Wn. App. 717, 732, 381 P.3d 1241 (2016).

[32] Id.

[33] Id. at 733.

[34] Id.

[35] Id.

[36] RP (Apr. 2, 2019) at 192.

listened to the conversation."[37]  Unlike Irby, the State did not obtain any information material to the defense.  Although Koeller argues the court abused its discretion because the State did not prove Chief Briones did not listen to the call, the trial court found otherwise, and its finding is supported by substantial evidence.  Because the court's findings support its conclusion that Koeller was not prejudiced, the court did not abuse its discretion by denying the CrR 8.3(b) motion to dismiss.

## II.  Ineffective Assistance of Counsel

Koeller, both in his opening brief and in his statement of additional grounds (SAG), contends his representation at trial was ineffective in four different ways.  We review a claim of ineffective assistance of counsel de novo.[38]  The defendant bears the burden of proving ineffective assistance of counsel.[39]  First, the defendant must prove his counsel's performance was deficient.[40]  Second, the defendant must prove his counsel's deficient performance prejudiced his defense.[41]  Failure to prove either deficiency or prejudice ends the inquiry.[42]  A defendant must overcome "a strong

---

[37] Id. at 194.

[38] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[39] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)).

[40] Id. at 32 (quoting Strickland, 466 U.S. at 687).

[41] Id. at 33 (quoting Strickland, 466 U.S. at 687).

[42] State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886, 890 (2017) (citing State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)).

presumption that counsel's performance was reasonable."[43]  When defense counsel's decisions "can be characterized as legitimate trial strategy or tactics, performance is not deficient."[44]

First, Koeller argues his defense counsels' decision to proceed with the CrR 8.3(b) hearing about the jail call was deficient because Chief Briones was unavailable to testify.  Assuming defense counsels' decision was deficient, he fails to prove prejudice.  As discussed above, Ohme's testimony established that he never told anyone about the contents of the call.  An access report from the automated recording system generated a few days before the hearing shows Ohme was the only person ever to access the call.[45]  And Koeller admits "[i]t is impossible, based on the record on appeal, to determine what, if any, portion of the call Chief Briones heard."[46]  Although Koeller urges us to presume he was prejudiced, he fails to cite apt authority for doing so here.[47]  Koeller fails

---

[43] Grier, 171 Wn.2d at 33 (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

[44] Kyllo, 166 Wn.2d at 863.

[45] Id. at 183-85; CP at 391.

[46] Appellant's Br. at 32.

[47] Koeller cites In re Davis, 152 Wn.2d 647, 101 P.3d 1 (2004), and Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed.2d 347 (1974), to support his position.  But in In re Davis, our Supreme Court explained the "presumptive prejudice rule [from ineffective assistance of counsel] is 'limited to the complete denial of counsel and comparable circumstances," 152 Wn.2d at 674 (quoting Visciotti v. Woodford, 288 F.3d 1097, 1106 (9th Cir. 2002)) (internal quotation marks omitted)), and those circumstances are not present here.  The circumstances in Davis v. Alaska were entirely different from those here because that trial court so limited the scope of the defendant's cross-examination of a witness that the defendant "was thus denied the right of effective cross-examination," allowing a presumption of prejudice.  415 U.S. at

to show Chief Briones' testimony would have been anything more than cumulative and so fails to demonstrate prejudice from his absence.

Second, Koeller argues his defense counsels were deficient because they did not call his son, D.T.K., to testify at trial. After Koeller was convicted, D.T.K. spoke at the sentencing hearing and condemned his father:

> Just like my mother and sister have said, he's given us all life sentences, and he should get one too. I'm not a religious person at all, but since this started, I have been praying really hard that my two youngest little brothers, [names omitted], haven't been victimized just like me and my siblings were.[48]

With this record, it is clear why D.T.K was not called to testify. Koeller fails to show a deficient decision by his counsels.[49]

Third, Koeller argues his representation was deficient because his counsels did not introduce a series of text messages between himself and A.R.C. that could have been used for impeachment. According to Koeller, these messages showed A.R.C.'s motive for accusing him of molestation stemmed from a fight over caring for D.T.K. But his counsels introduced the

---

318. Neither case supports the proposition that the absence of a witness allows a presumption of prejudice.

[48] RP (May 3, 2019) at 80-81.

[49] Koeller relies upon unsupported assertions and facts outside the record to argue his counsels were also deficient for not interviewing D.T.K. or his second ex-wife. SAG at 4-5. If he seeks review relying upon facts outside the record, he should file a personal restraint petition. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

same theory when it cross-examined A.R.C.[50] He fails to demonstrate introducing the same theory through different evidence is deficient here.

Fourth, Koeller argues his counsels were deficient because they did not introduce a report prepared by a guardian ad litem (GAL) during his divorce proceedings. The GAL investigated Koeller's "criminal action/history," including accusations from 1997 and 1998 that he molested two children, a 2007 accusation he molested another child, and his pleading no contest to the 2007 accusation.[51] Assuming the report was admissible, introducing it would have risked placing this history before the jury. Koeller fails to show his counsels' performance was deficient for declining to take this risk.

III.  Prosecutorial Misconduct

We review allegations of prosecutorial misconduct for abuse of discretion.[52] To show prosecutorial misconduct, a defendant must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'"[53] When, as here, a defendant fails to object to improper conduct at trial, the error is waived unless the conduct "'is so flagrant and ill-intentioned that it caused an enduring and

---

[50] See RP (Apr. 5, 2019) at 857-61 (defense counsel asking about whether A.R.C. sought to terminate Koeller's parental rights to D.T.K. as a way of getting money from her mother to help care for her brother).

[51] CP at 64-67.

[52] State v. Ish, 170 Wn.2d 189, 195, 241 P.3d 389 (2010) (citing State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)).

[53] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008).

resulting prejudice that could not have been neutralized by a curative instruction.'"[54]

Koeller contends the prosecutor prejudiced him by vouching for A.R.C.'s credibility during closing argument. Improper vouching occurs when the prosecutor expresses a personal belief supporting a witness's credibility or relies upon facts not in evidence to support a witness's testimony.[55] However, a prosecutor has "wide latitude" to argue reasonable inferences from the evidence during closing argument.[56]

During his closing argument, the prosecutor repeated a sentence throughout: "The truth does not fear analysis." Koeller contends this sentence was a comment on A.R.C.'s credibility and especially prejudicial because she was the only witness who testified to his crimes. But understood within context, the prosecutor did not vouch for A.R.C., as shown by this example from early in his closing argument:

> Part of the process is asking these questions. Asking "Why? Does it make sense?"
>
> [Defense counsel], in cross-examination, went through a bunch of different things that aren't directly related to the charges in this case. There are other things about [A.R.C.] or her life, and we're going to talk about those individually.
>
> One of the purposes of introducing that, her pregnancy, her brother's health issues, money, is to suggest to you that maybe

---

[54] Matter of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017) (quoting In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 143, 385 P.3d 135 (2016)).

[55] Thorgerson, 172 Wn.2d at 443 (citing Ish, 170 Wn.2d at 196).

[56] Lui, 188 Wn.2d at 557 (citing Thorgerson, 172 Wn.2d at 453).

[A.R.C.] has a different motive. Maybe it's not just that she wants to get the truth out. Maybe it's not just that she wants to tell the secret [of being sexually abused] and be done with this, be done with hiding all of this. Maybe it's because she wants the money.

So these are all important questions. It's not improper to have asked those questions. And you should talk about this amongst yourselves when you go back to deliberate. Remember, the truth has nothing to fear from analysis. So talk about it. Does that make sense? Is that a reasonable motive for a person to describe what [A.R.C.] described? How could she possibility benefit from that? Does it make sense?[57]

The prosecutor posed both the State's and Koeller's theories about A.R.C.'s credibility and invited the jury to analyze them. He merely urged the jury to perform its ordinary duties: analyzing testimony to determine a witness's credibility.[58] He returned to this theme in rebuttal:

[T]his is an important question that [defense counsel] raises here because the evidence that you have indicates that [A.R.C.] was willing to tell [her high school teacher] other things that were really sensitive, kind of private information. She told her about her pregnancy when she was in high school. She talked to the teacher about that.

Think about this. When defense counsel references that fact for you, he says, in this kind of dramatic fashion, "There is doubt." All right. As if he's saying, "Look no further. There is doubt. See! She had a teacher. Must not have been abused."

You should look further. The truth does not fear analysis. Part of your job is questions. We've been asking questions in the courtroom to get the facts out so you know what the evidence is. But the questions don't end when I stop talking. The questions don't end when the judge sends you back into the jury room to deliberate. You also have an obligation to ask questions. You

---

[57] RP (Apr. 5, 2019) at 960-61 (emphasis added).

[58] See Thorgerson, 172 Wn.2d at 443 ("Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact.") (citing Ish, 170 Wn.2d at 196).

have an obligation to ask questions about what I'm saying [and] what [defense counsel] is saying. Do our arguments make sense with the rest of the evidence?[59]

The prosecutor again urged the jury to scrutinize A.R.C.'s testimony and each side's arguments within the context of that testimony. Because Koeller fails to show the prosecutor expressed a personal opinion about A.R.C.'s credibility or relied upon evidence outside the record to support her testimony, the prosecutor did not vouch for A.R.C.[60]

Koeller argues the prosecutor conveyed a personal opinion about guilt by asking the jury to find him not guilty of third degree child molestation due to insufficient evidence, thus implying the remaining charges had sufficient evidence to convict. The prosecutor explained why the State had failed to prove its case:

> So let's talk about Count 8 [for third degree child molestation]. This is the incident where [A.R.C.] wanted to go to the movies. . . .
>
> . . . .
>
> . . . She's 13 now. She's old enough to be aware of what she has been doing with her stepfather. She's old enough to be ashamed of it. And she was.
>
> . . . .
>
> The problem with Count 8 is that that is charged as child molestation in the third degree. And because of that, I have to

---

[59] RP (Apr. 5, 2019) at 1119-20 (emphasis added).

[60] Koeller identifies two other instances where the prosecutor told the jury "the truth does not fear analysis." The record shows that, for the same reasons as above, those instances also did not vouch for A.R.C. See RP (Apr. 5, 2019) at 954, 984.

> ask you to find the [d]efendant not guilty on Count 8. The testimony from [A.R.C.] does not match the charge that the State filed. So I want to explain why that is, and then we're going to move on here.
>
> Child [m]olestation in the [t]hird [d]egree, the essential elements of that charge require that the State prove that [A.R.C.] was at least 14, but less than 16. Her recollection is that she was in the 7th grade[,] and her recollection is that she was 13 at the time. So [third degree child molestation] is not what the State charged. So the charge is incorrect. The defendant should be found not guilty of Count 8 because of the way it's charged.[61]

"Prejudicial error will not be found unless it is 'clear and unmistakable' that counsel is expressing a personal opinion."[62] The prosecutor did not clearly or unmistakably express a personal opinion about A.R.C.'s credibility or the truth of the other charges against Koeller.

The prosecutor's remaining fleeting arguments from which Koeller claims prejudice are merely reasonable arguments from the evidence. For example, the prosecutor argued A.R.C. was credible because she testified "under penalty of perjury."[63] Koeller contends this was improper vouching. As another example, Koeller also contends he was prejudiced by the prosecutor arguing A.R.C. recalled an act of molestation "very well."[64] This too is merely a reasonable argument about A.R.C.'s credibility based upon her testimony.

---

[61] RP (Apr. 5, 2019) at 976-78.

[62] State v. Allen, 161 Wn. App. 727, 746, 255 P.3d 784 (2011) (internal quotation marks omitted) (quoting State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995)), affirmed, 176 Wn.2d 611 (2013).

[63] RP (Apr. 5, 2019) at 978.

[64] Id. at 979.

18

Koeller fails to show any of the prosecutor's closing arguments were improper.  Even if they were improper, a review of the record shows none were flagrant or ill intentioned, so Koeller waived these issues by failing to object.

IV. Cumulative Error

Koeller contends retrial is required due to prejudice from cumulative errors.  Because he fails to show any error, the cumulative error doctrine does not apply.[65]

Therefore, we affirm.

_____

WE CONCUR:

_____    _____

---

[65] State v. Clark, 187 Wn.2d 641, 655, 389 P.3d 462 (2017) (citing State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984)).